UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN BURNS,

       Plaintiff,

v.                                              Case No. 8:15-cv-2330-T17-TBM

MEDTRONIC, INC.;
NEAL HORNE, individually;
MIKE MATHIAS, individually; and
CLAYTON DESANTIS, individually,

       Defendants.

_____

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This case is before the court pursuant to the Motion to Dismiss Plaintiff's Amended Complaint and *Incorporated Memorandum of Law in Support* (the "motion") filed by the defendants Medtronic, Inc. ("Medtronic"), Neal Horne ("Horne"), Mike Mathias ("Mathias"), and Clayton DeSantis's ("DeSantis") (Doc. 35). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## PROCEDURAL HISTORY

On October 2, 2015, the Plaintiff, John Burns ("Plaintiff"), filed suit against Clayton DeSantis, Neal Horne, Mike Mathias, and Medtronic, Inc. ("Defendants") (Doc. 1). Defendants filed the motion on November 25, 2015 (Doc. 23). On December 14, 2015, Plaintiff filed an Amended Complaint and Demand for Jury Trial against all Defendants (Doc. 29). Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint on January 8, 2016 (Doc. 35). Finally,

1

Plaintiff responded on January 25, 2016 with an Opposition to Defendant's Motion to Dismiss Plaintiffs Amended Complaint (Doc. 41). The facts hereafter are taken as true for the purposes of resolving the instant motion.

## BACKGROUND

### I. Parties

Defendant, Medtronic is a publically traded company that develops and manufactures medical device technology and therapies that it then sells to hospitals and doctors (Doc. 29, ¶¶ 10–11). Horne was Medtronic's District Manager of Southwest Florida (Doc. 29, ¶ 15). DeSantis was Medtronic's District Service Manager (Doc. 29, ¶ 18). Both reported to Mathias, the Vice President of Sales for the Florida Region. All aforementioned individuals had the authority to affect the terms and conditions of Plaintiff's employment (Doc. 29, ¶¶ 15–20).

Plaintiff worked for Medtronic from approximately 2000 to 2014 (Doc, 29, ¶¶ 12–15). During that time, Plaintiff worked as a Clinical Specialist from June 5, 2000 until approximately 2004 (Doc. 29, ¶ 12). From 2004 until March 2, 2014, Plaintiff worked as Sales Representative for Medtronic (Doc. 29, ¶ 13). Plaintiff then worked again as a Clinical Specialist from March 3, 2014 until his termination on May 2, 2014 (Doc. 29, ¶ 14).

### II. Factual Background

Around January, 2013, Plaintiff reported illegal sale practices to both Horne and Mathias because he was concerned he could not legally compete with these practices (Doc. 29, ¶ 32–34). Medtronic took no steps to investigate Plaintiff's reports (Doc. 29, ¶ 28). Through Horne and Mathias, Medtronic told Plaintiff he needed to perform the same illegal practices as his co-

2

workers, including unlawful entertainment of physicians, expense reporting and superbilling (Doc. 29, ¶ 32–34). Plaintiff refused to participate in these unlawful practices because he believed they were designed to defraud the government's Medicare program and constituted fraud on Medtronic's shareholders (Doc. 29, ¶ 35).

In or around October, 2013, Horne met with Plaintiff to discuss Plaintiff's decreasing sales numbers (Doc. 29, ¶49). At this meeting Plaintiff explained the decrease was due to an unlawful deal by his competitors, but reiterated that he would not engage in illegal activities by doing "whatever it takes" (Doc.29, ¶¶ 50–51). As a result, Horne demoted Plaintiff because Plaintiff's sales territory no longer needed a full-time representative (Doc. 29, ¶ 53). Subsequently co-workers, Jesse Turcott and Brian Haworth, who Plaintiff had reported for illegal practices, were promoted and took over Plaintiff's sales territory (Doc. 29, ¶ 54). Finally, on or about November 25, 2013, Horne said he would demote Plaintiff to Clinical Specialist, unless Plaintiff chose to resign (Doc. 29, ¶ 56).

On January 27, 2014, after the ultimatum from Horne, Plaintiff's counsel sent a letter to Medtronic objecting to the retaliation against Plaintiff for his protected activity (Doc. 29, ¶ 58). In response Medtronic's Ethics and Compliance Officer invited Plaintiff, via email, to participate in a confidential, investigative interview (Doc. 29, ¶ 59–60). Horne and Mathias were both copied on the email invitation and were aware of Plaintiff's participation in the confidential interview (Doc. 29, ¶¶ 60–61). On March 1, 2014, Plaintiff complained to the Ethics and Compliance Officer regarding Medtronic's retaliatory activity. However, because Plaintiff needed his job, he refused to resign and was demoted to clinical specialist on March 3, 2014 (Doc. 29, ¶ 64). DeSantis was now Plaintiff's supervisor who also knew of his protected activity (Doc. 29, ¶¶ 64–65).

Defendants stripped Plaintiff of the area and resources needed to perform his new job as Clinical Specialist (Doc. 29, ¶ 66). Managers and co-workers had stopped communicating with him, which also hindered his ability to perform (Doc. 29, ¶ 67). Medtronic then accused Plaintiff of insubordination and issued unwarranted disciplinary action (Doc. 29, ¶ 68). On May 2, 2014, without a legitimate business reason, Medtronic terminated Plaintiff (Doc.29, ¶¶ 69–72).

Plaintiff was trained by Medtronic on practices that constituted fraud and illegal kickbacks pursuant to the Corporate Integrity Agreement ("CIA") (Doc. 29, ¶ 38). As a result, Plaintiff believed the illegal sales practices used by Defendants constituted Medicare fraud and illegal kickbacks (Doc. 29, ¶ 38).

Further, Plaintiff believed that Medtronic's continuation of these practices would affect the company's liquidity under 17 C.F.R. § 229.303[1]. He believed Medtronic's practices would subject the company to fines from anti-kickback violations (Doc. 29, ¶ 40). Plaintiff was aware of Medtronic's prior fines in the amount of $75 million for Medicare fraud and overbilling, as well as a competitor's anti-kickback fines in the amount of $22 million (Doc. 29, ¶ 42–43). Plaintiff also consulted the Advance Medical Technology Association ("AdvaMed") regarding the reported practices, and was given information that strengthened his belief that Medtronic's practices violated federal law (Doc. 29, ¶ 41).

Additionally, pursuant to Medtronic's 10-K annual report filed with the U.S. Securities and Exchange Commission, Plaintiff believed that Medtronic faced losing its Medicare contract because of continuous engagement in illegal activity (Doc, 29, ¶¶ 44–45). The culmination of

---

[1] Plaintiff did not use 17 C.F.R. § 229.303 as the basis of his SOX claim. It was only referenced to demonstrate how significant the loss of Medicare contracts would be on shareholders (Doc. 41, n. 9).

these factors led Plaintiff to believe that Medtronic's illegal practices compromised its financial stability, which he inferred would affect Medtronic's shareholders (Doc. 29, ¶ 47).

Plaintiff brought a two-count suit for retaliatory discharge claiming that Defendants violated the Sarbanes Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX"), Count I, and the Florida Private Whistleblower Act, Florida Statute § 448.102 ("FWA"), Count II (Doc. 29, ¶ 1). Count I, SOX, is premised upon Plaintiff's reasonable belief that the Defendants' practices have defrauded Medtronic's shareholders (Doc. 29). Count II, FWA, is premised upon Plaintiff's reasonable belief that Defendants' illegal practices violated The False Claims Act, 31 U.S.C. §§ 3729–3733, The Federal Anti-Kickback Statute, 42 U.S.C. § 1320a–7b, and The Physician Payments Sunshine Act (Doc. 29, ¶ 37).

## STANDARD OF REVIEW

### I. Pleading Standard Under Rule 8(a)(2)

Federal Rule of Civil Procedure Rule 8(a)(2) requires that a plaintiff's complaint lay out a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 573 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (2007) (internal quotation marks omitted).

Therefore, "to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombley*, 550 U.S.

at 570). In considering a motion to dismiss, courts follow a simple, two-pronged approach: "1) eliminate any allegations in a complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In sum, the "pleadings standard Rule 8 announces does not require 'detailed factual allegations,' but demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombley*, 550 U.S. at 555).

## II. Applicability of Rule 9(b)

Both SOX and FWA claims are subject to Federal Rule of Civil Procedure Rule 8(a)(2), "[a] short and plain statement of the claim showing that the pleader is entitles to relief." *Bell Atl. Corp*, 550 U.S., at 573. However, Defendants argue that Plaintiff's allegations regarding the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b, and False Claims Act, 31 U.S.C. §§ 3729–3733 are subject to Rule 9(b) (Doc. 35). Rule 9(b) states that when alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

However, In *Wallace v. Tesoro Corporation*, the United States Fifth Circuit Court of Appeals explicitly held that when a SOX claim is premised on allegations of fraud, those fraud allegations are not subject to Rule 9(b). 796 F.3d 468, 480–481 (5th Cir. 2015). Accordingly, Plaintiff's claims do not have to be plead with the particularity required by 9(b) because his fraud allegations merely support his SOX and FWA claims. The legal standard for Plaintiff's

SOX and FWA claims remains a "short and plain statement of the claim showing that the pleader is entitled to relief", and any argument involving Rule 9(b) is inapplicable. *Twombley*, 550 U.S., at 573.

## DISCUSSION

Defendants move to dismiss Plaintiff's complaint with prejudice for failure to meet the requisite pleading standard for Count I, SOX, and Count II, FWA, claims under Federal Rule of Civil Procedure 12(b)(6) (Doc. 35). The Court will first address Count I of Plaintiff's Amended Complaint, specifically: (1) what the proper reasonable belief standard is; (2) whether Plaintiff's adequately plead an objectively reasonable belief of shareholder fraud; and (3) Plaintiff's allegations of securities fraud.

When addressing Count II, Plaintiff's FWA claim, the Court will first address the violation standard used to plead under the FWA. The Court will then address Defendants secondary argument with regard to the Anti-Kickback Statute, the False Claims Act, and the Physician Sunshine Act.

### I. Count I: Sarbanes-Oxley Act, 18 U.S.C. § 1514A

In order to have a SOX claim, a plaintiff must plausibly allege: (1) he or she engaged in protected activity as an employee; (2) the employer either knew or suspected that the employee knew of or engaged in such activity; (3) employee suffered an unfavorable personal action; and (4) the protected activity was a contributing factor in the unfavorable action. *Gale v. U.S. Dep't of Labor*, 384 Fed. App'x 926, 929 (11th Cir. 2010). Protected activity is limited to six categories of conduct: (1) 18 U.S.C. § 1341, (2) 18 U.S.C. § 1343, (3) 18 U.S.C. § 1344, (4) 18

U.SC. § 1348, (5) any rule or regulation of the Securities Exchange Commission, and (6) any federal provision related to fraud on shareholders. 18 U.S.C. § 1514A.

In order for a plaintiff to receive protection under SOX, he or she must have a reasonable belief that the conduct or practices of the employer fell into one of the six categories. *Rhinehimer v. U.S. Bancorp Inv., Inc.*, 787 F.3d 797, 811 (6th Cir. 2015). Reasonable belief consists of a subjective and objective component. *Id.* The subjective component is satisfied if a plaintiff actually believes the complained of conduct fits into one of the categories. *Id.* The objective component is "evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Id.*; *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 352 (4th Cir. 2008).

The question of objective reasonableness is amenable to disposition as a matter of law, but only when *no* reasonable person could believe there was conduct that fit into one of the listed categories. *Rhinehimer*, 787 F.3d at 811 (quoting *Livingston*, 520 F.3d at 361); *Allen v. Admin. Rev. Board*, 514 F.3d 468, 477 (5th Cir. 2008) (holding that objective reasonableness can only be decided as matter of law, after dismissal of plaintiff's complaint, if there is no genuine issue of material fact). If there is any question about whether the reasonable minds could disagree about whether the belief was objectively reasonable, the issue cannot be decided as a matter of law. *Rhinehimer*, 787 F.3d at 812.

### A. Reasonable Belief Standard

Defendants contend that to have a reasonable belief in shareholder fraud for the purposes of a SOX claim, a plaintiff's allegations must specifically relate to one of the enumerated categories of protection (Doc. 35). The "definitively and specifically" requirement was rejected

by the Sixth Circuit in *Rhinehimer*, where the court held that "to sustain a complaint based on protected activity under § 1514A [SOX], 'the complainant need only show that he or she 'reasonably believes' that the conduct complained of constitutes a violation' of the enumerated laws." 787 F.3d at 811. (quoting *Sylvester v. Parexel Int'l, Inc.*, ARB No. 07–123, 2011 WL 2165854, at *11 (U.S. Dep't of Labor May 25, 2011).

Defendants additionally contend that allegations must approximate the elements of fraud, therefore Plaintiff needs to allege the materiality of shareholder fraud. (Doc. 35). This requirement was also rejected by the Sixth Circuit by saying an "employee need not establish the reasonableness of his or her belief as to each element of the violation." *Rhinehimer*, 787 F.3d at 811. Accordingly, Defendants argument regarding the materiality of shareholder fraud is moot.

### B. Objectively Reasonable Belief of Shareholder Fraud

Defendants argue that Plaintiff's belief of shareholder fraud is not objectively reasonable, therefore amenable to a decision as a matter of law (Doc. 35). However, the Defendants rely on cases distinguishable from the present case to arrive at their conclusion.[2] As a result, the Court finds that the question of objective reasonableness cannot be decided as a matter of law.

In Plaintiff's Amended Complaint, he alleges that his belief of shareholder fraud was the result of his training pursuant to the Corporate Integrity Agreements signed by Medtronic (Doc. 29, ¶ 38). From what he learned in that capacity, he believes the practices of Medtronic would subject the company to significant fines for fraud and illegal kickbacks (Doc. 29, ¶ 38). Plaintiff

---

[2] Defendants rely on *Safarian v. Am. DG Energy, Inc.* and *Day v. Staples, Inc.*, among other cases to say that improper billing, illegal kickback scheme, improper expense reporting and Medicaid fraud cannot be the basis for a reasonable belief of shareholder fraud (Doc. 35). However, all of the cases cited by the Defendant are factually distinguishable and non-precedential.

had prior knowledge of similar fines placed on Medtronic's competitors for illegal kickbacks in the amount of $22 million, as well as knowledge of previous fraud by Medtronic, resulting in a $75 million payment to the government (Doc. 29, ¶ 42–43). Additionally, Plaintiff alleges that he consulted AdvaMed, who strengthened his belief of fraud (Doc. 29, ¶ 41). Further, Medtronic's 10-K annual report filed with the U.S. Securities and Exchange Commission states that if Medtronic had participated in Medicare fraud, the company would lose its contracts with Medicare (Doc, 29, ¶¶ 44–45). Taken as true, Plaintiff presents plausible allegations of an objectively reasonable belief of shareholder fraud in his Amended Complaint.

### i. 17 C.F.R. § 229.303

17 C.F.R. § 229.303 requires the reporting of any trends, demands, commitments, or uncertainties that will or likely will result in an increase or decrease in a company's liquidity. 17 C.F.R. 229.303 (2011). Plaintiff alleges that his knowledge and prior training led him to believe that Medtronic's illegal practices would likely lead to an increase or decrease in liquidity, which would cause Medtronic to be subject to 17 C.F.R. § 229.303 (Doc. 29, ¶ 46). However, Plaintiff notes that 17 C.F.R. § 229.303 was not used as a premise for his SOX claim. It was referenced only to substantiate his objective belief of shareholder fraud (Doc. 41, n. 9). As such, Defendants argument regarding 17 C.F.R. § 229.303 is irrelevant.

### I. Count II: Florida Whistleblower Act

The Florida Whistleblower Act protects employees who "[o]bjected to, or refused to participate in, any activity, policy or practice of the employer which is in violation of a law, rule, or regulation." Fl. Stat. § 448.102(3). Defendants argue that Plaintiff's Amended Complaint does not contain allegations sufficient to claim protection under FWA.

### A. Violation Standard

When ruling on an issue of Florida law that the Florida Supreme Court has not spoken on, the federal courts are bound by the decisions of Florida's district courts of appeal. *Canalejo v. ADG, LLC*, No. 8:14-cv-17-T-MAP, 2015 U.S. Dist. LEXIS 109564, at *2–3 (M.D. Fla. 2015). The Defendants assert that there is a disagreement amongst the Florida district courts of appeal on what needs to be plead to receive FWA protections. The Defendants find the decision in *Kearns v. Farmer Acquisition Co.* more persuasive. They use the *Kearns* decision to assert that the Plaintiff has to show an *actual violation* by the employer to have a FWA claim. *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458 (Fla. Dist. Ct. App. 2015).

Although *Kearns* does discuss an actual violation standard in reference to FWA claims, the Defendants are incorrect in their assertion that there is a split in district court of appeal opinions. In *Aery v. Wallace Lincoln-Mercury, LLC*, the Fourth District Court of Appeal held that a claim under FWA only requires a *good faith, reasonable belief* by the employee that the actions of the employer violated the law. 118 So. 3d 904, 916 (Fla. Dist. Ct. App. 2013). Subsequently, the Second District in *Kearns* interpreted the language of FWA to require an *actual violation* of the law. 157 So. 3d at 465. However, as the Middle District of Florida has already established, *Aery* remains the controlling law on the issue because the actual violation standard in *Kearns* was discussed in dicta. *Canalejo*, 2015 U.S. Dist. LEXIS 109564, at *3–4.

A discussion about a standard that is not applicable is merely dicta, not binding precedent. *Id.* at 2. The *Kearns* court states that "the issue of which standard applies is not determinative because we conclude Kearns presented evidence that, when viewed in the light most favorable to him, establishes an actual violation of the law." 157 So. 3d at 465. Therefore,

the Plaintiff's FWA claim need only be supported by a plausible allegation of what Plaintiff, in good faith, *believes to be a violation* of a law, rule or regulation.

### B. Good Faith Belief of Violation of a Law, Rule or Regulation

To show a plaintiff has a good faith belief, that belief must be objectively reasonable. *Aery*, 118 So. 3d at 916. Defendants make a secondary argument that even if there is no actual violation standard, no objective reasonable person could believe there was a violation of the law (Doc. 35). To show objectivity, Aery, the plaintiff, alleges that he observed his manager committing an illegal, or what appeared to be illegal, part-switching scheme in the body shop. *Aery*, 118 So. 3d at 907. He repeatedly reported this act to his superiors, describing them as unlawful. *Id.* In doing so, the plaintiff satisfied the requirement that his belief be objectively reasonable. *Aery*, 118 So. 3d at 916. Similarly, the Plaintiff in this case, through his knowledge and experience, had an objectively reasonable belief that the Defendants violated the Anti-Kickback Statute, False Claims Act, and Physician Sunshine Act.

### i. Anti-Kickback Statute, 42 U.S.C. § 1320a–7b

The Anti-Kickback Statute ("AKS") provides penalties for the payment or exchange of value to induce or reward any business involving services payable by federal healthcare programs. 42 U.S.C. § 1320a–7b. Defendants argue that Plaintiff's AKS allegations must meet the standard under Federal Rules of Civil Procedure Rule 9(b). However, 9(b) does not apply.[3] Plaintiff's allegations identify his knowledge of illegal entertainment of physicians and his

---

[3] *See supra* Standard of Review Part II

reports to superiors (Doc. 29, ¶ 32–34). Following the *Aery* standard, Plaintiff presents plausible allegations of an objectively reasonable belief under Rule 8(a)(2).[4]

### ii. False Claims Act, 31 U.S.C. §§ 3729–3733

The False Claims Act ("FCA") prohibits the knowing submission of a false or fraudulent claim for payment to the federal government. 31 U.S.C. §§ 3729–3733. Defendants also argue that Plaintiff was required to plead 9(b) particularity in order to have a claim under the False Claims Act ("FCA"), 31U.S.C. §§ 3729–3733, however 9(b) is not applicable.[5] The Amended Complaint alleges that Medtronic's clinical specialists knowingly submitted superbills, coded for services doctors did not perform and tests that were not administered (Doc. 29, ¶ 32–34). Plaintiff refused to take part in those activities (Doc. 29). As such, Plaintiff's allegations plausibly establish an objectively reasonable belief that Medtronic was in violation of the FCA.

### iii. Physician Sunshine Act, 42 U.S.C. § 1320a–7h

The Physician Sunshine Act requires manufacturers of medical devices covered by Medicare to annually report certain payments or transfers of value given to physicians. 42 U.S.C. § 1320a–7h. The entertainment of physicians is considered a transfer of value. 42 U.S.C. § 1320a–7h(5)(e). In his Amended Complaint, Plaintiff alleges that Medtronic allowed for the improper expensing of the meals and entertainment provided to physicians. While these practices are subject to the reporting requirement of the Act, Defendants are correct that Plaintiff does not identify a belief that Medtronic did not report its entertainment practices in accordance with the

---

[4] Defendants do not challenge Plaintiff's allegations of objectively reasonable belief under Federal Rules of Civil Procedure 8(a)(2).
[5] *See supra* Standard of Review Part II.

Physician Sunshine Act (Doc. 29). Thus, Plaintiff did not plausibly allege a reasonable belief that the Defendants violated the requirements of the Physician Sunshine Act.

## CONCLUSION

Accordingly, it is **OREDERED** that Defendants Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED IN PART AND DENIED IN PART**. Defendants motion is **GRANTED** with regard to the Physician Sunshine Act, 42 U.S.C. § 1320a–7h because Plaintiff did not allege that Medtronic did not properly report under this statute. Defendants Motion is **DENIED** on all other claims. If Plaintiff chooses to amend with regard to the Physician Sunshine Act, 42 U.S.C. § 1320a–7h, it must be within **10 days** of this order. If there is no second amended complaint filed within 10 days, the Defendants have **10 days** to answer Plaintiff's Amended Complaint.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 12th day of July, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to: All Parties and Counsel of Record.