### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| JOHN BURNS,<br>                    Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC., NEAL<br>HORNE, MIKE MATHIAS, and<br>CLAYTON DESANTIS,<br>                    Defendants. | Case No. 8:15-cv-2330-EAK-TBM<br><br>**Dispositive Motion** |

### Defendants' Motion for Summary Judgment and
### Incorporated Memorandum of Law in Support

Pursuant to Federal Rule of Civil Procedure 56, Defendants Medtronic, Inc., Clayton DeSantis, Neal Horne, and Mike Mathias respectfully move for summary judgment on John Burns's claims, as set forth in Defendants' incorporated Memorandum of Law, the supporting Declarations and attached Exhibits, the pleadings on file, and all files, records, and proceedings herein.

### Introduction

Medtronic moved John Burns out of his role as a Sales Representative and into a supporting role as a Clinical Specialist because he was one of the worst performing representatives in his region and Medtronic's customers were complaining about him. Burns was later terminated because he repeatedly violated the express conditions of his employment. There is no dispute about either of these points. There is also no evidence to suggest that either employment decision was

driven in any way by retaliatory motives. Indeed, Burns could not describe a single time, before his demotion, when he reported to any of the Defendants the conduct about which he claims to have blown the whistle.

The absence of any evidence to support Burns's claims justifies summary disposition. But Burns's testimony makes that conclusion all the more inevitable. To prevail on his Sarbanes-Oxley claim, Burns must establish that he reasonably believed that Defendants violated a federal law relating to fraud against Medtronic's shareholders, and that such violation was or would have been "material" to them. He confirmed at his deposition that he had no such belief—not even subjectively, much less a belief that was objectively reasonable. Rather, he admitted that he knew all along that his complaints would have no impact on shareholders, Medtronic's financial stability, or Medtronic's contracts with Medicare. Burns's admissions should perhaps come as no surprise: he had already reported much of the same conduct to the U.S. Department of Justice (and this Court) as a relator in a False Claims Act suit, and the government showed no interest in his claims, which he voluntarily dismissed. Burns has known at least since then that his allegations, even if true, would not and could not possibly result in harm to Medtronic's shareholders. And he admitted it.

Because no reasonable jury could find for Burns on either of his two
claims, this Court should grant summary judgment for Defendants Medtronic, Inc.,
Clayton DeSantis, Neal Horne, and Mike Mathias.

### Undisputed Facts

As a Sales Representative, Burns was responsible for selling Medtronic
products. (Gleason Decl., Ex. 1 at 149:5–18.) His job (and compensation) was
conditioned on his performance. (*Id.*) Beginning in 2012, Burns's sales fell
precipitously, decreasing by 55%. (Horne Decl., Ex. 4.) With these numbers,
Burns ranked either last or second-to-last among Sales Representatives in his
region. (Horne Decl. ¶ 6.)

As Burns's sales dropped, his manager, Horne, began receiving complaints
about him from Medtronic's physician customers. (*Id.* ¶¶ 7–9.) One customer
complained that Burns was spreading rumors that the physician had purchased
breast implants for a sales representative of a competitor. (Horne Decl., Ex. 1 at
39:12–40:15; *id.* ¶ 7.) Another physician confronted Horne and Mathias (Horne's
boss), reporting that Burns had threatened him and that Burns was no longer
permitted in his office. (*Id.* ¶ 8; *id.*, Ex. 1 at 45:1–50:3; Mathias Decl. ¶ 6; *id.*,
Ex. 1 at 82:5–85:5.)

Burns's threatening behavior around this time was not directed only at
physician-customers, but also toward his colleagues, several of whom complained

about Burns and expressed concerns about their safety. (Horne Decl., Ex. 1 at 89:11–90:12, 184:23–185:25; *see also* DeSantis Decl., Ex. 1 at 43:5–46:16; 136:5–138:13.)

As a result, in early November 2013, Horne met with Burns to discuss Burns's subpar performance and his colleagues' complaints. In that discussion, instead of termination, Horne offered Burns the chance to remain employed at Medtronic as a Clinical Specialist, whose job it was to support Sales Representatives in the region; Burns accepted. (Horne Decl. ¶ 10.) In his new role, Burns would report to DeSantis, the District Services Manager for the Southwest Florida District. (DeSantis Decl. ¶ 4.) In February 2014, DeSantis and Horne met with Burns to discuss his responsibilities as a Clinical Specialist. (Gleason Decl., Ex. 1 at 276:10–21.) Horne then sent Burns an email memorializing Burns's obligations:

- Burns would be directed by the Sales Representatives he would be supporting — Jesse Turcott, Brian Haworth — or by DeSantis;

- Burns would discontinue all sales activities unless directed otherwise by Turcott, Haworth, or DeSantis;

- All outgoing customer communications were to be discontinued; and

- Burns would direct all incoming customer communications to Turcott via text message.

(*Id.*, Ex. 2.)

In the days and weeks that followed, Burns repeatedly flouted these agreed-upon requirements. (*Id.*; Horne Decl. ¶¶ 12–16.) Horne thus sent Burns another email cataloging Burns's transgressions:

- Burns changed his voicemail to direct calls to another Clinical Specialist and not to Turcott as instructed;

- Burns did not forward customer communications directly to Turcott;

- Burns engaged in both patient and customer interactions without notifying anyone; and

- Burns sent invitations to medical procedures using Outlook and Medtronic's calendar system, Salesforce.com, rather than texting or calling Turcott as instructed.

(Gleason Decl., Ex. 2.) The next day, Burns sent an email to Horne re-confirming that he understood his new job duties. (*Id.*, Ex. 7.) And, shortly thereafter, DeSantis met with Burns—again—to discuss Burns's responsibilities and to reinforce Horne's email. (*Id.*, Ex. 3.) Finally, DeSantis sent Burns an email reiterating the reiteration of the expectations that, by this time, had been articulated multiple times orally and in writing. (*Id.*)

But Burns continued to violate the conditions of his new job. (Horne Decl. ¶¶ 12–16; DeSantis Decl. ¶¶ 7–9.) He continued to contact customers without direction from Turcott, Haworth, or DeSantis—failing to even notify them of the communications after the fact. (Horne Decl. ¶ 15; DeSantis Decl. ¶ 9.) Burns sent Outlook invitations—rather than text messages—for customer appointments.

(Gleason Decl., Ex. 1 at 281:10–282:25, 290:19–23.) He sent emails to Turcott about customer communications without the information necessary for Turcott to complete his job, and Turcott repeatedly required clarification. (Horne Decl. ¶ 16; *id.*, Exs. 5, 6.) Turcott and DeSantis repeatedly reminded Burns of information to be included in such messages. (Horne Decl. ¶ 15; DeSantis Decl. ¶ 9.) One Sales Representative that Burns was supposed to be supporting reported to Horne that Burns bullied and intimidated her—the opposite of "support." (Horne Decl. ¶ 12; DeSantis Decl. ¶ 8; *id.*, Ex. 2; *id.*, Ex. 1 at 76:23–78:9, 136:5–138:13.) Incredibly, in early April 2014, Medtronic received an email from St. Jude's in-house counsel alerting it that Burns was seen putting defamatory ***bumper stickers*** on physicians' cars (which identified a St. Jude Sales Representative and referred to that Sales Representative as engaging in "embezzlement" and operating a "shaddy business" [*sic*]). (Gupta Decl., Exs. 1, 2.)

While such conduct was obviously inimical to Medtronic's interests, Burns remained in his role through the beginning of May 2014, shortly before which Burns received a customer request for Medtronic devices for several surgeries. He emailed the customer asking her to contact Turcott, but he did not copy Turcott on the email or forward it to him as instructed. And the email address that Burns provided the customer was wrong. (Gleason Decl., Ex. 6.) That was the last straw.

Burns was aware of all of the expectations of his Clinical Specialist position and repeatedly failed to abide by them. (Horne Decl. ¶¶ 12–16; *id.*, Exs. 5, 6.) Given his repeated failures to do so, he was terminated on May 2, 2014.

Regarding the compliance backdrop of this case, as a Medtronic employee, Burns was obligated to report any violations of the Code of Conduct. (Rich Decl. ¶ 6.) He could do so anonymously, through the "Voice Your Concern" hotline, or directly to a supervisor or to Human Resources. (*Id.*) Between 2011 and 2014, Burns did not report through any such means the conduct he alleges he reported in this case. Indeed, he confirmed as much in each of those years by certifying—via Medtronic's internal learning management system—that he was aware of but had not reported any misconduct. (Rich Decl., Ex. 2; *see also* Gleason Decl., Ex. 1 at 165:23–167:15.) Rather, the first instance over that span of years in which Burns claims to have made such a report is a letter his lawyer sent in late January 2014. That letter, which was marked as subject to Rule 408 of the Federal Rules of Evidence, contained allegations that are nearly identical to this lawsuit's. (Second Am. Compl. ¶ 58; Rich Decl., Ex. 1 at 37:13–19.) Prominent among those allegations, for example, was a claim that certain Sales Representatives went fishing with doctors. Burns, however, attempted to facilitate fishing trips between customers and Horne. (Horne Decl., Exs. 2, 3; *see also* Gleason Decl., Ex. 1 at 235:21–241:16.) Burns confirmed at his deposition that he did nothing to

investigate who paid for the fishing trips that he complained of—*i.e.*, whether anything of value was transferred to the physicians. (Gleason Decl., Ex. 1 at 63:2–64:19, 85:17–86:1.) And, he never complained about these activities in his annual Code of Conduct certifications. (Rich Decl., Ex. 2.)

Three weeks after being fired, Burns filed a Sarbanes-Oxley Complaint with OSHA. If, after investigating, OSHA had reasonable cause to believe retaliation occurred, it would have notified Medtronic of those findings with a preliminary order including all necessary relief, including "[r]einstatement with the same seniority status that the employee would have had but for the retaliation; back pay with interest; and compensation for any special damages sustained as a result of the retaliation." *See* Supplemental Information to Procedures for the Handling of Retaliation Complaints Under Section 806 of the Sarbanes-Oxley Act of 2002, 80 Fed. Reg. 43 (Mar. 5, 2015) (codified at 29 C.F.R. pt. 1980). Here, OSHA investigated Burns's claims but made no such findings, issued no preliminary order, and ordered no relief. (Gleason Decl., Ex. 4.) Burns sued and, since then, has twice amended his Complaint to add new factual allegations. [Docs. 1, 29, 53.]

This suit was not the first that Burns filed against Medtronic. In 2010, he sued the company under the False Claims Act based on nearly identical allegations of purportedly illegal conduct as he asserts in this case. *U.S. ex rel. John Burns v. Medtronic, et al.*, No. 8:10-cv-01851 [Doc. 1]. The Department of Justice took no

action in response to his allegations, and Burns voluntarily dismissed the case. [*Id.* at Doc. 13.] Though Defendants did not learn of the False Claims Act case until after Burns's termination (Mathias Decl. ¶ 9; Horne Decl. ¶ 18; DeSantis Decl. ¶ 12), the case was unsealed on August 19, 2011. [*Id.* at Doc. 11.] Medtronic's share price went ***up*** (slightly) thereafter. (NYSE. (2011, Aug. 19–22). Medtronic, Inc. stock quote. Retrieved from http://www.nasdaq.com/symbol/mdt/historical.)

### Argument

Summary judgment is warranted when there are no disputed issues of material fact. Fed. R. Civ. P. 56(c). A trifling factual dispute does not preclude a grant of summary judgment; rather the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). For factual issues to be "genuine," the evidence must be such "that a reasonable jury could return a verdict for the non-movant" and "they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citation omitted).

Because the undisputed record does not, cannot, and could not support a verdict in Burns's favor, the Court should grant summary judgment for all Defendants as to all claims.

## I.      The record does not support a SOX claim.

To prove his SOX claim, Burns must show that: "(1) he engaged in protected activity; (2) the employer knew of the protected activity; (3) he suffered an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action." *Johnson v. Stein Mart, Inc.*, No. 3:06-cv-341-J-33TEM, 2007 U.S. Dist. LEXIS 44579, at *10 (M.D. Fla. June 20, 2007), *aff'd*, 440 F. App'x 795 (11th Cir. 2011). Burns cannot do so.

### A.      Burns did not engage in a protected activity under SOX.

Burns cannot establish that he engaged in a protected activity because the information that Burns claims to have reported does not qualify for whistleblower protections. [1]

SOX was not intended to and does not protect all employee-whistleblowers. *Johnson v. Stein Mart, Inc.*, 440 F. App'x 795, 800 (11th Cir. 2011) (quoting *Day v.*

---

[1]      As noted by this Court in its decision on Defendants' Motion to Dismiss, 17 C.F.R. § 229.303, cited in Burns's First and Second Amended Complaints, was not a basis for Burns's SOX claim and was "referenced only to substantiate his objective belief of shareholder fraud." [Doc. 52.] Defendants, therefore, do not address this provision as a separate claim. Regardless, Burns testified that he does not believe that the conduct he allegedly complained about would subject Medtronic to fines or cause Medtronic to lose contracts with Medicare. (Gleason Decl., Ex. 1 at 13:5–16:8.)

*Staples, Inc.*, 555 F.3d 42, 54–55 (1st Cir. 2009)). Rather, the statute "restricts the employee's protection to information only about certain types of conduct," which fall into "three broad categories," only one of which is even arguably relevant here, according to Burns's own Complaint: "a violation of any provision of federal law relating to fraud against shareholders." *Id.*; [Doc. 53]; *see also Burns v. Medtronic, Inc.*, No. 8:15-cv-2330-T17-TBM, 2016 U.S. Dist. LEXIS 90435, at *10 (M.D. Fla. July 12, 2016). A SOX plaintiff like Burns must subjectively believe that the reported conduct violates a law relating to fraud against shareholders, and that belief must be objectively reasonable. *Johnson*, 2007 U.S. Dist. LEXIS 44579, at *10. Burns doesn't actually (subjectively) believe that the reported conduct violated such a law. And, even if he did, it wouldn't be a reasonable belief.

In its Order denying Defendants' Motion to Dismiss [Doc. 52], this Court held that the case could proceed to discovery because Burns had properly alleged an objectively reasonable belief of shareholder fraud because "he believes the practices of Medtronic would subject the company to significant fines for fraud and illegal kickbacks" and because Medtronic could "lose its contracts with Medicare." *Burns*, 2016 U.S. Dist. LEXIS 90435, at *12–13. But, Burns has since admitted that he does not—and did not, and never did—believe that the conduct he

allegedly complained about, if true, would subject Medtronic to fines or cause

Medtronic to lose its contracts with Medicare:

> Q:      [L]et's say today the United States Government finds out
>         about the allegations that you have in your complaint, is it
>         your expectation that a likely outcome of that is that the
>         Medicare contracts that Medtronic has will be canceled?
>
> Burns:  My opinion, I would say, no. I just think Medtronic is too big
>         and has too much influence.
> …
>
> Q:      You don't know one way or another whether Medtronic has a
>         contract with Medicare?
>
> Burns:  No, I don't, sir.
>
> Q:      [I]t's your opinion today that if the United States Government
>         learned of the allegations in your complaint Medtronic's
>         relationship and its ability to participate in the Medicare
>         program would be unaffected.
>
> Burns:  I've never seen where it's been affected in the past with
>         issues, so I would probably say, no, it wouldn't affect.
>
> …
>
> Q:      Was that your opinion in 2013?
>
> Burns:  Yes, sir.
>
> Q:      Was that your opinion in 2012?
>
> Burns:  Yes, sir.
>
> Q:      Do you believe today that the conduct that you described in
>         your complaint will have a significant impact on Medtronic's
>         financial stability?

| Burns: | No. |
|---|---|
| Q: | Have you ever believed that the conduct that you describe in your complaint will have a significant financial impact on Medtronic's financial stability? |
| Burns: | No. |
| Q: | Do you believe that the conduct that you describe in your complaint will directly affect Medtronic's shareholders? |
| Burns: | No. |
| … | |
| Q: | I'm now asking whether at any point in time you have believed that the conduct that you described in your complaint in this case will directly affect Medtronic's shareholders? |
| Burns: | No. |

(Gleason Decl., Ex. 1 at 13:5–16:8.)

Burns did not, ever, have either a subjective or objectively reasonable belief that Medtronic's shareholders would be defrauded by the misconduct that he allegedly reported. He testified precisely and unequivocally to the contrary. Thus no reasonable jury could find in his favor, and his SOX claim fails.

**B.      Burns did not report any alleged misconduct before his demotion.**

Setting the foregoing failures aside, to succeed on his SOX claim, Burns also must prove that he reported misconduct. *Marshall v. Northrup*, No. 2005-SOX-0008, 2005 DOLSOX LEXIS 63, at *6–7 (ALJ June 22, 2005) ("Protected activity

is defined under SOX as reporting an employer's conduct . . . ."). And he must demonstrate that "the reported information [had] a certain degree of specificity [and that he] state[d] particular concerns, which, at the very least, reasonably identify a respondent's conduct that the complainant believes to be illegal." *Lerbs v. Buca Di Beppo, Inc.*, No. 2004-SOX-8, 2004 DOLSOX LEXIS 65, at *33–34 (ALJ June 15, 2004) (citation omitted). Because he cannot meet that burden with respect to the concerns alleged here, summary judgment is warranted as to the first ensuing employment action, his demotion. *See Gale v. United States Dep't of Labor*, 384 Fed. Appx. 926, 930 (11th Cir. 2010) (granting summary judgment because "[plaintiff] could not recall ever communicating any concerns that the ASAP program, as it was ultimately implemented, violated or potentially violated any law or regulation.").

There is no dispute: Burns did not report any of the misconduct that forms the basis of his SOX claim to anyone at Medtronic before his transition to Clinical Specialist in early 2014. Every year between 2011 and 2014, he made an annual certification that he had not made such a report. (Rich Decl., Ex. 2.) Burns confirmed this in his deposition. (Gleason Decl., Ex. 1 at 308:8–310:4.)

Burns's alleged concerns were first communicated to Medtronic in a letter from his counsel on January 27, 2014. (Second Am. Compl. ¶ 58.) Because that

letter arrived (months) after Burns was informed of the demotion, it cannot serve as a basis for a SOX claim as to that employment decision.

**C.      Burns was terminated due to his abject failure to perform his role according to his superiors' instructions, his agreement thereto, and because he demoralized customers and colleagues by antisocial behavior.**

Again setting aside the shareholder-fraud deficiencies, Defendants turn to the last possible basis for a SOX claim, Burns's termination—which, admittedly, did follow the letter from his lawyer. But timing is not dispositive: an employer is entitled to summary judgment under SOX where it demonstrates "by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of the protected activity." *Johnson*, 2007 U.S. Dist. LEXIS 44579, at *14. As in *Johnson*, summary judgment is warranted here because Burns's poor job performance justified his demotion and termination. *Id.* This Court's reasoning in *Johnson* forecloses any other conclusion in this case:

> While the Court is obligated to view the Plaintiff's evidence in the light most favorable to her, [Plaintiff] has failed to create a disputed issue of fact as to whether she would have been terminated regardless of her protected activity. [Plaintiff] has only offered her own conclusions and interpretations of the facts of this case, which are not sufficient to question [Defendant-employer's] personnel decision. It must be emphasized that an employer has the right to make an employment decision for a multitude of reasons: It can be for the right reason, for the wrong reason, or for no reason. The employer is only prohibited from taking an adverse job action for an impermissible reason. The Court finds that [Defendant] would have terminated [Plaintiff's] employment even in the absence of her

protected activity, and summary judgment should be granted on this
count.

*Id.* at *16–17 (quotation and citations omitted).

As in *Johnson*, Plaintiff was transitioned to the Clinical Specialist position
and terminated for numerous reasons, none of which were impermissible. Before
Medtronic transitioned Plaintiff to the Clinical Specialist position, his sales
decreased precipitously (Horne Decl., Ex. 4) and multiple customers complained
about him (Horne Decl., Ex. 1 at 39:12–40:15, 45:2–52:21; *see also* Mathias
Decl., Ex. 1 at 82:25–87:7).

Then, following his demotion and as a Clinical Specialist, Burns (1) failed
to follow instructions that had been provided multiple times (Gleason Decl.,
Exs. 2, 3; Horne Decl., Exs. 5, 6); (2) was accused of bullying and intimidating a
Sales Representative in another district (DeSantis Decl., Ex. 2; *id.*, Ex. 1 at 76:23–
78:9); and (3) was seen putting defamatory bumper stickers about a competitor on
customers' cars (Gupta Decl., Ex. 1, 2).

Medtronic demoted Burns because of his poor performance as a Sales
Representative and terminated him because he repeatedly violated the express
conditions of his employment as a Clinical Specialist and engaged in behavior
unbecoming a professional. The undisputed factual record simply does not permit
another conclusion. As in *Johnson*, summary judgment in favor of Defendants is
therefore warranted.

**D.     The temporal proximity between Burns's purported reports and his transition and termination are too distant.**

The proximity in time between the purported protected activity and unfavorable personnel actions often may be logically relevant. *See Johnson,* 2007 U.S. Dist. LEXIS 44579, at *12–13 (citation omitted). While temporal proximity can establish causation between a protected activity and an unfavorable employment action, that proximity must be "very close." *Id.* at *13 (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Time measured in months is generally insufficient. *See, e.g.*, *Johnson,* 2007 U.S. Dist. LEXIS 44579, at *13 (holding that the twenty-month period between plaintiff's first complaint and her termination did not establish a causal link, although there was only a one-month period between plaintiff's "final warning" and her second reported complaint) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (holding that three months between protected activity and retaliation did not create sufficient temporal link)); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (same, 3.5 months). *Cf., e.g., Stone & Webster Eng'g Corp. v. Herman*, 115 F.3d 1568, 1573 (11th Cir. 1997) (finding that a one-day separation between protected conduct and demotion raised an inference of causation). The Supreme Court has expressly held that longer periods, such as twenty months, suggest "no causality at all." *Clark County Sch. Dist.*, 532 U.S. at 274.

To be clear, Burns has not provided any evidence that he actually reported any alleged and particularized misconduct until January 27, 2014. But he claims that he generally mentioned misconduct as early as 2010 and throughout 2013. (Second Am. Compl. ¶ 83(a); Gleason Decl., Ex. 1 at 53:22–54:2.) If Burns told his supervisors about the alleged violations as early as 2010, he cannot, as a matter of law, establish a causal link between his reporting of misconduct and his transition (in early 2014) or termination (in May 2014). *See Clark County Sch. Dist.*, 532 U.S. at 274; *Johnson,* 2007 U.S. Dist. LEXIS 44579, at *13.

Likewise, even if Burns had reported alleged particularized misconduct as late as throughout 2013, his transition and termination were still at least one or, more likely, several months after the report. Burns is unable, as a matter of law, to establish a temporal link between his alleged reporting of misconduct and his transition or termination. And proximity is just that: proximity. It does not and cannot erase Burns's dismal employment record. (*See* Horne Decl., Ex. 1 at 39:12–40:15, 45:2–52:21; *see also id.*, Exs. 4, 5, 6; *see also* Mathias Decl., Ex. 1 at 82:25–89:17; Gleason Decl., Ex. 2.)

## II.     The record does not support a Florida Whistleblower Act claim.

To prevail on his claim under the Florida Whistleblower Act, Florida Statute § 448.101, *et seq.*, Burns "must prove (1) that []he engaged in statutorily protected expression; (2) []he suffered an adverse employment action; and (3) the adverse

employment action was causally linked to the statutorily protected activity." *White v. Purdue Pharma, Inc.*, 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005). Burns is unable to establish at least two of the elements.

### A.      Burns cannot prove that he engaged in statutorily-protected expression as defined under the Act.

This Court previously held that Burns must establish that he had a good-faith, objectively reasonable belief that the conduct he allegedly objected to was illegal.[2] He cannot meet that burden. Burns has alleged that he reported and refused to engage in practices that he contends violated three statutes: (1) the Federal Anti-Kickback statute; (2) the False Claims Act; or (3) the Physician Payment Sunshine Act. But the record contains no evidence that he had a good-faith, objectively reasonable belief that the conduct he purportedly objected to violated any of these laws.

---

[2] *See Burns*, 2016 U.S. Dist. LEXIS 90435, at *15 (citing *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 912–13 (Fla. Dist. Ct. App. 4th Dist. 2013). Medtronic maintains that Burns must prove that he objected to an actual violation of law to succeed under the FWA. *See Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458 (Fla. Dist. Ct. App. 2d Dist. 2015). Medtronic here preserves its position that *Kearns*, rather than *Aery*, controls.

Furthermore, in February 2017, another judge in this district held that it was "persuaded that the Supreme Court of Florida would adopt *Kearns* rather than *Aery*." *Graddy v. Wal-Mart Stores East, LP*, No. 5:16-cv-9-Oc-28PRL, 2017 U.S. Dist. LEXIS 20676, at *9 (M.D. Fla. Feb. 14, 2017).

### i.   Burns lacks a good-faith, objectively reasonable belief that Medtronic violated the False Claims Act.

Burns cannot credibly contend that he believed that the conduct at issue would have violated the False Claims Act. He previously filed an FCA case against Medtronic based on many of the same allegations. *See United States ex rel. Burns v. Medtronic, et al.*, Case No. 8:10-cv-01851 [Doc. 1]. And the allegations did not result in a finding that the statute was violated. Instead, Burns, himself, voluntarily dismissed his case. [*Id.* at Doc. 13.]

### ii.   Burns lacks a good-faith, objectively reasonable belief that Medtronic violated the Anti-Kickback Statute.

Nor could a reasonable jury find that Burns had a good-faith belief that Medtronic violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) by allowing Sales Representatives to fish, ski, and participate in other extracurricular activities with doctors.

*First*, Burns encouraged these types of activities, even attempting to facilitate fishing trips between customers and Horne. (Horne Decl., Exs. 2, 3; *see also* Gleason Decl., Ex. 1, 235:21–241:16.) And while Burns testified that he purportedly abided by the Code of Conduct "to a higher level" than others, he admitted to having previously ridden motorcycles with a doctor—but said that it was permissible because he "did not pay for customer's gas." (*Id.* at 229:19–230:25.)

*Second*, in other words, social activity without payment is not a kickback. (Rich Decl., Ex. 1 at 66:2–5, 113:7–114:17.) As a former FCA relator, Burns understood that to violate the anti-kickback law, physicians must have received something of value in exchange for referrals to a federal healthcare program. Burns made no attempt to determine whether that, in fact, occurred (it did not), relying instead on publicly available pictures of friends out fishing. (Gleason Decl., Ex. 1 at 215:14–216:6.) Pictures, obviously, do not generally explain accounting for social outings, much less do they connect such outings to federal healthcare funds. In addition, Medtronic's Business Conduct Standards, which is available to all Medtronic employees, and outlines practices to avoid violations of the AKS and other laws, explicitly states that "employees may participate in recreation or entertainment with a customer" if the activity is modest and if "the customer pays for the entire cost of his/her participation including meals and refreshments during the activity." (Rich Decl., Ex. 3.) Burns certified every year from 2011 through 2014 that he had read and understood the Code of Conduct, which requires him to comply with the Business Conduct Standards. (*Id*.; *id.* at ¶ 8.) Had Burns made any effort to review the Code and Business Conduct Standards—as he was required to do—it would have alleviated any concern (not actually demonstrated via the many company vehicles to raise such a concern) that fishing and skiing trips, where everyone pays his own way, violate the AKS or

Medtronic's internal policies. Burns is judging the book by its cover, and that is the opposite of a good-faith, objectively reasonable belief.

### iii. Burns lacks a good-faith, objectively reasonable belief that Medtronic violated the Physician Sunshine Act.

The Physician Sunshine Act, 42 C.F.R. parts 402 and 403, is a provision of the Affordable Care Act that requires the publishing of financial relationships between the medical industry and healthcare providers. The Sunshine Act took effect in 2013, and manufacturers were only responsible for reporting specific conduct that occurred on or after August 1, 2013.

Burns does not have a good-faith, objectively reasonable belief that Medtronic ever violated the Sunshine Act. While he has made vague allegations about customers and Medtronic employees engaging in social activities, those activities do not establish a violation of the Sunshine Act. *See* 42 C.F.R. parts 402 and 403.

As with the False Claims Act and the AKS, Burns purportedly believes that fishing and ski trips violate the Sunshine Act. (Gleason Decl., Ex. 1, at 86:23–87:6.) And, as with both those laws, Burns has admitted that he doesn't know if there is a minimum dollar threshold to be met before a transfer of value has to be reported under the Sunshine Act, that he doesn't know if Medtronic has ever reported any transfers of value to physicians under the Sunshine Act, and that he

did not conduct any research or try to determine whether Medtronic reported or did not report anything before filing his Complaint. (*Id.* at 180:1–181:19.)

Burns's only research was to contact AdvaMed and ask: "Is it legal for industry Representatives to take doctors under the sunshine act fishing on (industries) Reps personal boats? Is there a way to do this ethically or appropriately?" (Gleason Decl., Ex. 5.) In response, AdvaMed wrote, "[d]epending on the circumstances, it may be appropriate for an employee or agent of a Company to engage in certain activities with a Health Care Professional if each pays his or her own way." (*Id.*) Combining his lack of knowledge about any violations or compliance of the Sunshine Act, and his receipt of AdvaMed's response that expressly indicated such activity might be appropriate depending on the facts (which he did not bother to learn), Burns cannot demonstrate a good-faith, objectively reasonable belief that the Sunshine Act was violated.

### iv. Medtronic's Corporate Integrity Agreement is not a law, rule, or regulation.

The Whistleblower Act only protects employees who object or refuse to participate in a practice that violates a "law, rule, or regulation." Fl. Stat. § 448.102(3). If Burns's FWA claim is based on alleged violations of Medtronic's Corporate Integrity Agreement, as it appears it may be given his mention of the Agreement, his claim fails as a matter of law. A corporate integrity agreement is not a law, rule, or regulation as defined by the Act. Fl. Stat. § 448.102(3); *see*

*Hersh & Hersh v. S HHS*, No. C 06-4234-PJH, 2008 U.S. Dist. LEXIS 26237,

at *18 (N.D. Cal. Mar. 31, 2008) (explaining that a corporate integrity agreement

is a voluntary contract). Even if Burns objected or refused to participate in a

practice that violated such an agreement, he would not qualify for protection under

the Whistleblower Act.

### B.     Burns's adverse employment action was not causally linked to a statutorily protected activity.

The principles of temporal link and causation, discussed above in the

federal context, apply in the same way in Whistleblower Act cases. *See Hamm v.*

*Johnson Bros.*, No. 6:06-cv-1348-Orl-28KRS, 2008 U.S. Dist. LEXIS 54624, at

*19–20 (M.D. Fla. July 17, 2008) (citing *Brungart v. BellSouth Telecomms., Inc.*,

231 F.3d 791, 799 (11th Cir. 2000)).

As with the SOX claim, Burns cannot show temporal proximity, and he

cannot establish that his alleged—and highly generalized—reporting had anything

to do with his (much) later demotion and termination.

### Conclusion

Burns has been litigating against Medtronic for almost a decade. This

lawsuit cleverly attempts to convert speculative kickback (and Sunshine and False

Claims Act) concerns about which Burns knew few facts and did no investigation,

first voiced ***after*** his demotion, into SOX (or Whistleblower Act) claims, when he

was terminated due simply to incompetence and obstreperousness. Burns never

had any actual, much less objectively reasonable, reason to believe that

wrongdoing had occurred in the first place, or that it related in any way to fraud

against shareholders. This Court should enter judgment for the Defendants.

Dated: May 12, 2017            **Robins Kaplan LLP**

By: */s/Jeffrey S. Gleason*
    Jeffrey S. Gleason (admitted *pro hac vice)*
    Amira A. ElShareif (admitted *pro hac vice*)

    Robins Kaplan LLP
    800 LaSalle Avenue, Suite 2800
    Minneapolis, Minnesota 55402-2015
    Telephone: (612) 349-8500
    Fax: (612) 339-4181
    JGleason@RobinsKaplan.com
    AElShareif@RobinsKaplan.com

    Michael R. Whitt
    (Fla. Bar No. 0725020)
    Robins Kaplan LLP
    Suite 201
    711 5th Ave S
    Naples, FL 34102
    Telephone: (239) 433-7707
    Fax: 239-433-5933
    MWhitt@RobinsKaplan.com

    *Attorneys for Defendants Medtronic, Inc.,*
    *Neal Horne, Mike Mathias, and Clayton*
    *DeSantis*

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| JOHN BURNS,<br>        Plaintiff,<br>v.<br>MEDTRONIC, INC., NEAL<br>HORNE, MIKE MATHIAS, and<br>CLAYTON DESANTIS,<br>        Defendants. | Case No. 8:15-cv-2330-EAK-TBM |

## Defendants' Request for Oral Argument

Pursuant to Middle District of Florida Local Rule 3.01(j), Defendants

Medtronic, Inc., Neal Horne, Mike Mathias, and Clayton DeSantis hereby

respectfully request oral argument on Defendants' Motion for Summary Judgment.

Defendants estimate the time for argument to be one (1) hour.

Dated: May 12, 2017                **Robins Kaplan LLP**


                                   By: */s/Jeffrey S. Gleason*
                                        Jeffrey S. Gleason
                                        (admitted *pro hac vice)*
                                        Amira A. ElShareif
                                        (admitted *pro hac vice*)
                                        Robins Kaplan LLP
                                        800 LaSalle Avenue, Suite 2800
                                        Minneapolis, Minnesota 55402-2015
                                        Telephone: (612) 349-8500
                                        Fax: (612) 339-4181
                                        JGleason@RobinsKaplan.com
                                        AElShareif@RobinsKaplan.com

Michael R. Whitt
(Fla. Bar No. 0725020)
Robins Kaplan LLP
Suite 201
711 5th Ave S
Naples, FL 34102
Telephone: (239) 433-7707
Fax: 239-433-5933
MWhitt@RobinsKaplan.com


*Attorneys for Defendants Medtronic, Inc.,
Neal Horne, Mike Mathias, and Clayton
DeSantis*

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| JOHN BURNS, | Case No. 8:15-cv-2330-EAK-TBM |
| Plaintiff, | |
| v. | **Certificate of Service** |
| MEDTRONIC, INC., NEAL HORNE, MIKE MATHIAS, and CLAYTON DESANTIS, | |
| Defendants. | |

I HEREBY CERTIFY that on May 12, 2017, I, Jeffrey S. Gleason,

electronically filed the foregoing with the Clerk of the Court by using the

CM/ECF system which will send a notice of electronic filing to:

Cynthia N. Sass
Yvette D. Everhart
Joshua R. Kersey
Law Offices of Cynthia N. Sass, P.A.
601 W. Dr. Martin Luther King Jr.
Blvd.
Tampa, FL 33603
csass@sasslawfirm.com
yeverhart@sasslawfirm.com
jkersey@sasslawfirm.com

John C. Davis
Law Office of John C. Davis
623 Beard Street
Tallahassee, Florida 32306-6321
john@johndavislaw.net

Dated: May 12, 2017          **Robins Kaplan LLP**

By: */s/Jeffrey S. Gleason*
        Jeffrey S. Gleason (admitted *pro hac vice)*
        Amira A. ElShareif (admitted *pro hac vice*)

Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402-2015
Telephone: (612) 349-8500
Fax: (612) 339-4181
JGleason@RobinsKaplan.com
AElShareif@RobinsKaplan.com

Michael R. Whitt
(Fla. Bar No. 0725020)
Robins Kaplan LLP
Suite 201
711 5th Ave S
Naples, FL 34102
Telephone: (239) 433-7707
Fax: 239-433-5933
MWhitt@RobinsKaplan.com

*Attorneys for Defendants Medtronic, Inc., Neal Horne, Mike Mathias, and Clayton DeSantis*