**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOHN BURNS,

      Plaintiff,

v.                                  Case No.  8:15-cv-2330-T17-TBM

MEDTRONIC, INC.;
NEAL HORNE, individually;
MIKE MATHIAS, individually; and
CLAYTON DESANTIS, individually,

      Defendants.

---

**PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION AGAINST**
**DEFENDANTS MEDTRONIC, INC. AND CLAYTON DESANTIS**

Plaintiff JOHN BURNS, through undersigned counsel and pursuant to Rule 37(e) of the Federal Rules of Civil Procedure, respectfully moves this Court to enter sanctions against Defendants Medtronic, Inc. ("Medtronic") and Clayton DeSantis ("DeSantis") for spoliation of evidence. Defendants had an obligation to preserve DeSantis' text messages but failed to do so. As a result, Plaintiff will never know the full magnitude of the text messages that were lost.

**Relevant Facts**

**A.**     **Defendants knew of their obligation to preserve text messages.**

On January 27, 2014, Plaintiff sent Defendants a letter notifying them of his legal claims. (**Exhibit 1**). Defendants should have reasonably anticipated litigation at that time.  On March 5, 2014, Plaintiff sent Defendants a litigation hold letter outlining Defendants' obligation to preserve information potentially relevant to his claims. (**Exhibit 2**).  Medtronic claims that, on March 10, 2014, five days after Plaintiff sent his preservation letter, it issued a

litigation hold letter which instructed certain custodians to preserve relevant information.[1] (**Exhibit 3**, pp. 24-25, No. 44; **Exhibit 8**, Bothof, 8:2-22, 15:19-16:9). DeSantis received a copy of that letter. (**Exhibit 3**, p. 24, No. 44). Medtronic also provided a second litigation hold in January 2016. (**Exhibit 3**, p. 25, No. 44).

On or about May 23, 2014, Plaintiff filed his Sarbanes-Oxley retaliation claims against all four Defendants with the Occupational Safety and Health Administration ("OSHA"). OSHA notified Defendants of Plaintiff's claims, and Defendants participated in OSHA's investigation.

Then Plaintiff filed this lawsuit on October 2, 2015. (Dkt. 1). Defendants Medtronic and DeSantis were served on October 8 and 15, 2015 respectively. (**Exhibit 4**).

**B.    Defendants have known that text messages were important to this litigation.**

Defendants knew the importance of text messages to this litigation. First, Defendants know that text messages are a primary means of communication used by the most important witnesses as well as Defendants. Second, Plaintiff's March 5, 2014 preservation letter expressly identified text messages as needing to be preserved. (**Exhibit 1**). Third, Medtronic claims it issued its own litigation hold on March 10, 2014 to relevant custodians in this litigation. (**Exhibit 3**, pp. 24-25, No. 44; **Exhibit 8**, Bothof, 8:2-22). Fourth, Plaintiff's very first requests for production to all four Defendants served on December 2, 2015, included a request for text messages.[2]

---

[1] Despite Plaintiff's request for a copy of the March 2014 litigation hold, Medtronic refused to produce the content, citing attorney-client privilege, so Plaintiff cannot confirm whether Medtronic instructed relevant custodians to preserve text messages.

[2] *Plaintiff's First Request for Production to Defendant Medtronic, Inc.* and *Plaintiff's First Request for Production to Defendant Clayton DeSantis*, included:

**C.    Despite knowledge of their obligation to preserve them and of their importance to this litigation, Defendants failed to preserve relevant text messages.**

After issuing the litigation holds, Medtronic took no steps to ensure that relevant text messages were preserved. Medtronic did not take possession of any of the Defendants' personal cell phones to make mirror images of the data until *after* this Court ordered Medtronic to produce text messages. (**Exhibit 8**, Bothof, 9:4-11; 21:8-22; 22:7-17; **Exhibit 9**, Knutson, 10:22-11:22; Dkt. 60). Nor did Medtronic take actual possession of DeSantis' personal cell phones at all. (**Exhibit 9**, Knutson, 32:14-16). Medtronic did not, for instance, instruct relevant custodians, including but not limited to Defendants, to take any steps to ensure that no data was altered in the event they replaced their phones. (**Exhibit 8**, Bothof, 24:2-8). As a result, when each of the custodians replaced their phones, they did not retain or preserve their old phones. And, while Defendants claim that their service providers cloned their old phones to their new phones, there is no way to guarantee that data was not lost in the transfer. (**Exhibit 10**, DeSantis, 145:11-14, 21-22). In fact, we know that some of the information on DeSantis' phone was lost because he admitted that when he traded in his phone, some information was lost, and that he did not know *which* information was lost. (**Exhibit 10**, DeSantis, 147:1-8). Had DeSantis' phone been copied prior to exchanging it, this would not be an issue.

---

. . . text messages, between Burns, Neal Horne, Mike Mathias, Clayton DeSantis, Christina Rich, Jesse Turcott, Brian Haworth, or any combination thereof, and/or anyone else regarding Plaintiff, his complaints, his sales and/or job performance, his transition and/or move to the clinical specialist position, his termination, and/or the allegations raised in Plaintiff's *Complaint and Demand for Jury Trial* ("Complaint") for the relevant period.

See **Exhibit 5**, p. 7, No. 19, and **Exhibit 6**, p. 6, No. 5 respectively.

For other Medtronic-owned devices, such as DeSantis' iPad, which he claims backed up his cell phone, Medtronic did not keep records of when that device was backed up. (**Exhibit 8**, Bothof, 23:24-24:1). Thus, there is no way to know if all potentially relevant data on the device was preserved.

In response to Plaintiff's first requests for production, Defendants represented that they would produce responsive text messages, but they did not. From February to October 2016 Plaintiff repeatedly asked Defendants for the text messages. Plaintiff either received a response along the lines of Defendants were looking into it, or did not receive a response at all. Plaintiff would later learn that during this entire period, Defendants had done virtually nothing to search, recover and/or produce responsive messages. Plaintiff then sought the Court's help in obtaining the discovery and the Court ordered Defendants to produce responsive text messages. (Dkts. 59 & 60).

Finally, Defendants did produce some text messages in reports from Medtronic's **in-house** Digital Forensics Lab, which Medtronic uses (or *can* use) to preserve and collect responsive ESI.[3] The reports indicated that nearly every text message from Defendant Neal Horne's ("Horne") cell phone had been deleted and not recovered. Despite a litigation hold and being a named Defendant, Horne had been deleting his text messages throughout the litigation up until August 2016. (Dkt. 64, pp. 3-4; Dkt. 64-1, pp. 2-3). The reports from Medtronic's Digital Forensics Lab also indicated that Medtronic searched for responsive text messages in October 2016 on the phones for pertinent witnesses Jesse Turcott and Brian

---

[3] Medtronic designated these reports as confidential pursuant to the parties' *Confidentiality Agreement*, and Plaintiff does not necessarily agree with this designation. However, in an abundance of caution, Plaintiff is not attaching same to this motion. Should the Court request same, Plaintiff can provide them at that time and/or Defendants can seek leave to file them under seal.

Haworth.  When Plaintiff's counsel inquired as to when Medtronic first asked the Digital Forensics Lab to search for responsive text messages, Medtronic's corporate representative refused to answer based on attorney-client privilege.  (**Exhibit 9**, Knutson, 12:24-13:6, 39:6-41:8). For that reason, Plaintiff can only conclude that October 2016, over a year after the litigation commenced, was the first time Medtronic searched, attempted to recover and/or produce text messages. Plaintiff will never know what was deleted between the March 2014 litigation holds and October 2016.

**D.    We know that at least some of DeSantis' text messages were not preserved, but there is no way to tell the magnitude of the deletion.**

With respect to DeSantis specifically, neither Medtronic nor DeSantis produced text messages from DeSantis' cell phone when they were first requested back on December 2, 2015. In fact, Defendants never searched DeSantis' phone at all. (**Exhibit 9**, Knutson, 11:7-11; 23:23-24:3) (where Medtronic's corporate representative explains that, to his knowledge, he must have physical possession of the cell phone to extract information from it and that he never took physical possession of DeSantis' phone).

Instead, Medtronic recovered the limited text messages it could from a backup of DeSantis's Apple iTunes account on his Medtronic-owned iPad. (**Exhibit 9**, Knutson, 24:11-25:4).[4] When DeSantis returned the iPad to the company back in May 2016 at the time of his retirement, Medtronic wiped the iPad clean and redistributed it back out to a new employee.[5]

---

[4] "iMessages are texts, photos, or videos that [an iPhone user] send[s] to iOS devices and Macs over Wi-Fi or cellular-data networks." https://support.apple.com/en-us/HT207006

[5] Again, Medtronic and DeSantis designated their interrogatory responses in this litigation as confidential in accordance the parties' *Confidentiality Agreement*. However, Plaintiff specifically disputes that Medtronic's interrogatory responses are confidential. Notwithstanding, in an abundance of caution, Plaintiff has not filed the interrogatory responses as exhibits, but can provide same to the Court should it determine that such documents are not in fact confidential and/or the Court requires Plaintiff to provide same.

While Medtronic claims it made a copy of the iPad to an external hard drive before putting it back into circulation, Medtronic cannot verify when the iPad was last backed up. Only limited messages from the copy of his iTunes account accessed from his old Medtronic iPad were recovered. (**Exhibit 10**, DeSantis, 148:6-11).

While DeSantis' interrogatory responses indicate that prior to May 2016, his iPhone would automatically back up to the iCloud, this turns out not to be true. For example, during his deposition, DeSantis testified that he made no efforts to physically back up his phone to his iPad, that he just *assumed* that his iPhone backed up to his iPad automatically, and that he did not understand how device-syncing worked. (**Exhibit 10**, DeSantis, 146:9-147:8). He also testified that he is not sure whether all information was backed up, and admitted that when he replaced his phone with his service provider, some information was lost, but did not know what. Id.

Moreover, Medtronic's corporate representative, Senior Principal IT Technologist— Forensic Investigator Anthony Knutson, testified that to his knowledge, only "iMessage" text messages are recoverable from an Apple iTunes backup. (**Exhibit 9**, Knutson, 30:4-13). That means even if DeSantis' phone was being backed up regularly to the iPad, any text messages that were not sent as iMessages would not be preserved. Id.

In addition, although DeSantis is a Defendant and required to preserve information, we know that he did not keep his old phone. While he claims that his service provider cloned his old phone to his new phone, DeSantis could not say with certainty that everything was in fact cloned. (**Exhibit 10**, DeSantis, 145:11-20). Indeed, as discussed above, DeSantis admitted that when he replaced his phone two years ago, some information was lost. (**Exhibit 10**, DeSantis,

147:1-8). Thus, Plaintiff does not know which, or how much, information was deleted from DeSantis' phone. (**Exhibit 10**, DeSantis, 145:15-17; **Exhibit 9**, Knutson, 11:7-11). DeSantis did not provide any text messages from any of his personal cell phones that he possessed since the March 2014 litigation holds. (**Exhibit 9**, Knutson, 23:23-24:2, 32:14-16; **Exhibit 10**, DeSantis, 148:6-8).

Further, we do know that, if all text messages had been preserved as required, Defendants should have produced more text messages from DeSantis' phone but did not. There are text message threads with pertinent witnesses that suggest that DeSantis had relevant text messages on his phones. By way of example only, on April 2 and 3, 2014, Jesse Turcott exchanged multiple text messages with DeSantis, which Defendants produced. However, those same text messages were not produced from the backup of DeSantis' iPad.[6] This demonstrates that text messages were deleted and not recovered.  Further, DeSantis swore under oath that he did not delete text messages related to Plaintiff as far back as April 2014. (**Exhibit 10**, DeSantis, 169:20-24). Yet, he does not now have all text messages related to the litigation on his phones, nor does he know if all information was backed up to the iCloud or iTunes.

Given that Medtronic did not take actual possession, clone or otherwise back up the respective devices at the time litigation holds were issued or even at the time the lawsuit commenced, Plaintiff has no way of knowing the extent to which other relevant text messages were destroyed.  Moreover, Medtronic's corporate representative similarly could not indicate

---

[6] As Medtronic claims that these reports are confidential, although Plaintiff does not necessarily agree, Plaintiff is not attaching same.  Should the Court request same, Plaintiff can provide them at that time, specifically comparing Medtronic 003353-54 and 005806.

whether other messages had been destroyed, and to the extent any text messages that could recovered, they would only be in partial form. (**Exhibit 9**, Knutson, 15:8-17:14).

## Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp*, 310 Fed. Appx. 298, 301 (11th Cir. 2009) (citations omitted).  Federal Rule of Civil Procedure 37(e) governs the spoliation of electronically stored information ("ESI"). A party may move for sanctions under Federal Rule of Civil Procedure 37(e) if "electronically stored information that should have been preserved in anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." *Id.* Upon a finding of spoliation of ESI, the Court may award sanctions if the spoliation prejudiced another party and/or the spoliating party had an intent to deprive a party of relevant evidence to the litigation.  Fed. R. Civ. P. 37(e)(1) and (2).

When evaluating a motion for spoliation, the Court must first determine whether the spoliated evidence involves ESI.  *See Living Color Enterprises, Inc. v. New Era Aquaculture*, *Ltd.*, No. 14-cv-62216-MARRA/MATTHEWMAN, 2016 WL 1105297 (S.D. Fla. Mar. 22, 2016).  If ESI is involved, the Court continues its analysis to determine: 1) whether a party had a duty to preserve the ESI at issue; 2) whether loss of the ESI was because a party failed to take reasonable steps to preserve it; and 3) whether the ESI evidence can be restored or replaced through additional discovery.  *See Living Color Enterprises*, 2016 WL 1105297.

If the Court finds that the loss of evidence prejudiced a party, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Such curative measures can include: preventing the spoliating party from putting on certain evidence; an instruction to the jury about the loss (not an inference about the lost evidence being unfavorable, etcetera); and monetary sanctions, including attorney's fees. *See* Fed. R. Civ. P. 37(e)(1), Advisory Committee Notes (2015). However, if the Court finds that a party acted with an intent to deprive another party with evidence relevant to the litigation, the Court may award stricter sanctions, such as a presumption by the Court that the information lost was unfavorable to the party, an adverse inference instruction to the jury that the destroyed information was unfavorable to the party, or dismiss the action or enter default judgment.  Fed. R. Civ. P. 37(e)(2).

1. **The spoliated evidence at issue is electronically stored information—text messages—subject to Rule 37(e).**

The destroyed evidence in this case are text messages, which constitute ESI.  *See Keim v. ADF Midatlantic, LLC*, No. 12-CV-80577-MARRA/MATTHEWMAN, 2016 WL 7048835, *3 (S.D. Fla. Dec. 5, 2016) (text messages are ESI); *Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, No. 14-cv-62216-MARRA/MATHEWMAN, 2016 WL 1105297 (S.D. Fla. Mar. 22, 2016) (same). As such, it is appropriate for this Court to evaluate Plaintiff's motion under Rule 37(e).  *See* Fed. R. Civ. P. 37(e).

2. **Since litigation was pending, Defendants had a duty to preserve potentially relevant text messages.**

In this Circuit, the duty to preserve arises when litigation is pending or when a party reasonably anticipates litigation. *McBride v. Coca-Cola Refreshments, USA, Inc.*, No. 8:12–

cv–275–T–AEP, 2012 WL 12915435 (M.D. Fla. 2012); *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317 (S.D. Fla. 2010) (citing *Southeastern Mechanical Services, Inc. v. Brody*, No. 8:08–CV–1151–T–30EAJ, 2009 WL 2242395, at *2 (M.D. Fla. Jul. 24, 2009) (a party has a duty to preserve once litigation was reasonably anticipated).  In the absence of pending litigation, a party reasonably foresees or anticipates litigation upon the receipt of a demand letter or upon the filing of a complaint with an administrative agency, such as the EEOC and/or OSHA. *See Southeastern Mechanical Services, Inc. v. Brody*, 2009 WL 2242395 (finding that litigation was reasonably anticipated upon the sending of a demand letter to defendants); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (the duty to preserve electronic evidence was triggered when plaintiff filed an EEOC charge).

Defendants reasonably anticipated litigation as early as when Plaintiff's counsel sent Defendants a demand letter outlining Plaintiff's claim, when Plaintiff sent Defendants a preservation letter to preserve evidence, **including text messages**, and again when Plaintiff filed his complaint with OSHA. Notwithstanding, Defendants unquestionably had a duty to preserve all potentially relevant evidence, including text messages, once Plaintiff initiated this lawsuit on October 2, 2015. Notably, Defendants recognized this duty by issuing its own litigation hold to certain employees as of **March 10, 2014,** over a year and a half before the litigation commenced. (**Exhibit 3**, pp. 24-25, No. 44). More importantly, Defendants knew they had a duty to preserve potentially relevant text messages to the litigation. This is especially true since Plaintiff put Defendants on notice of the need to preserve text messages well before the litigation commenced. (**Exhibit 2**).

Further, in Plaintiff's sales region, management routinely communicated between themselves, the sales representatives and the clinical specialists by text messages. (e.g., **Exhibit 10**, DeSantis, 16:7-16, 84:7-14, 88:7-15, 92:20-93:1). In fact, Defendants required Plaintiff to send text messages regarding work-related business to certain people and ultimately claim that his failure to do so was a reason for his termination. In addition, DeSantis admits that he was instructed to preserve evidence, including text message, as early as the onset of the litigation. (**Exhibit 10**, DeSantis, 143:21-144:9). Thus, all potentially relevant text messages to the litigation should have been preserved.

Further, the spoliation at issue occurred during the discovery phase of the case—well after Defendant issued a litigation hold and the litigation commenced. Therefore, Defendants should have preserved all potentially relevant text messages. *Living Color Enterprises*, 2016 WL 1105297.

### 3. The text messages were lost because Medtronic and DeSantis failed to take reasonable steps to preserve.

Although Medtronic is highly sophisticated and has its own forensic lab to preserve and collect ESI, Defendants failed to take reasonable steps to preserve potentially relevant ESI. As explained, after Medtronic issued a litigation hold to certain employees, it took no further steps to ensure adequate preservation of text messages. More specifically, Medtronic did not take immediate possession of the cell phones and did not clone them until October 2016, over a year after the litigation commenced, and well over *two years* after litigation hold notices went out. (**Exhibit 9**, Knutson, 11:4-22, 21:7-16). When any of the Defendants or other custodians replaced their cell phones during the litigation, Medtronic did not instruct the other Defendants or key employees to retain their phones or allow Medtronic to make mirror images of the cell

phones before they were replaced or upgraded. (**Exhibit 8**, Bothof, 9:12-16, 12:6-13, 21:8-16).

Nor did Medtronic take any steps to ensure that the cell phones or Medtronic-owned devices

were adequately backed up. (**Exhibit 8**, Bothof, 21:8-16). Significantly, the record suggests

that Medtronic's own legal counsel failed to ensure that Medtronic adequately preserved text

messages at least and until October 2016 after Medtronic was ordered to produce previously

requested text messages. *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009)

(It is the duty of legal counsel to ensure that the proper people receive and abide by the

litigation hold.).  Unquestionably, Medtronic failed to preserve text messages and it cannot

with certainty confirm that no additional text messages were not destroyed. *See Shaffer v.

Gautier*, No. 5:14-cv-00106-MOC-DSC, 2016 WL 6594126 (W.D. N.C. Sept. 1, 2016)

(finding that the plaintiff failed to take reasonable steps to preserve text messages and that

steps should have been taken to preserve that material, including printing out the texts, making

an electronic copy, cloning the phone, or even taking possession of the phone and instructing

the client to get a new phone).

      In addition, when DeSantis retired in May 2016, Medtronic did not take possession of

his personal phone to ensure preservation of any relevant text messages. While Medtronic

claims it made a copy of DeSantis' company iPad to an external hard drive before putting it

back into circulation, Medtronic cannot verify when the iPad was last backed up. (**Exhibit 9**,

Knutson, 31:4-8). Further, Medtronic admitted that the iTunes backup only preserves certain

data that Apple deems to be the most relevant (i.e. such as iMessages) and would not include

SMS messages, which are text messages typically sent by non-Apple users[7] or if an Apple user turns off iMessages. (**Exhibit 9**, Knutson, 30:5-23). Significantly, Medtronic made no effort to obtain DeSantis' personal phone to preserve and search, as it did for the other Defendants, and it took DeSantis at his word that his phone had no text messages responsive to the litigation. (**Exhibit 9**, Knutson, 11:7-11, 23:23-24:2, 41:18-42:5).

DeSantis also failed to take reasonable steps to preserve his text messages. While he claims that his cell phone backed up to his iCloud, he does not know with certainty if all data was indeed backed up. (**Exhibit 10**, DeSantis, 145:11-20, 146:9-25). He assumed it backed up automatically and never physically backed up his phone to the cloud or to his Medtronic owned iPad, and admitted that he did not know how all that stuff works. (**Exhibit 10**, DeSantis, 146:11-25). Moreover, DeSantis did not provide his personal cell phone to Medtronic to preserve it and/or collect any responsive text messages.  Although DeSantis claims that he did not delete any text messages related to Plaintiff or his claims when advised of the litigation hold (**Exhibit 10**, DeSantis, 169:20-24), this is also highly suspect given that the search of his iPad/iCloud account did not recover text messages that Plaintiff and DeSantis received through other witness's text records.

Thus, because of DeSantis' failure to preserve his text messages, records were lost. Not only will Plaintiff never know the magnitude of the loss of text messages or their potential relevance to the litigation, it will prove impossible for this Court to determine how many text

---

[7] According to Medtronic's interrogatory responses, which it deems confidential, pertinent witnesses to this case use iPhones.

messages were actually lost and/or their relevance to the litigation. *McQueen*, 2016 WL 6988820, at *3.

### 4. The deleted text messages cannot be restored or replaced through additional discovery.

While Plaintiff does not dispute that some text messages were obtained through other sources (i.e. text records from other individuals), it appears from the cell phone search reports produced by Medtronic's Digital Forensics Lab that there were deleted text messages that were unrecoverable.[8] From the forensic reports that were produced, there is no way for Plaintiff to confirm that all text records that were produced are the only text messages that ever existed. (**Exhibit 9**, Knutson, 15:8-17:14, 30:5-22). Medtronic's forensic lab could not determine what else was deleted and/or whether all deleted iMessages were recovered. To the extent that Medtronic recovered deleted text messages, such recovery would only have been a partial recovery. (**Exhibit 9**, Knutson, 15:8-16:5, 16:13-17). Further, any further forensic examination would also be futile and unlikely to recover anything additional that Medtronic's highly skilled forensics lab could not recover. Thus, based on the foregoing, Plaintiff sufficiently demonstrated that lost text messages were not replaced. *See Living Color*, 2016 WL 1105297, at *5 (recognizing that while some text records were provided through another source, the

---

[8] Plaintiff recognizes that Defendants may argue that Plaintiff could have obtained the text messages by subpoenaing the service providers for each involved individual. However, based on Plaintiff's counsel's experience, such an exercise would have been futile because the text content (i.e. the actual text messages), which Plaintiff sought, is not typically retained by cell phone service providers. Most recently, in August 2016, Plaintiff's counsel in an unrelated case sought similar types of records from Verizon Wireless. **Exhibit 7** is Verizon Wireless' response confirming that it does not maintain text content, which is what Plaintiff sought in this case. Moreover, even if Plaintiff had subpoenaed the information, the service providers have limits on how long they store data for non-content text information. For example, Verizon Wireless only maintains text detail reports for 365 days. Id.

Court continued its analysis because it appeared that at least some text messages were not replaced).

5. **Defendants' conduct requires sanctions under Rule 37(e).**

   a. **Defendants' failure to preserve and the loss of text messages prejudiced Plaintiff.**

Upon a finding that Defendants failed to preserve the text messages and that such text messages were lost and unrecoverable or replaced, the Court must determine whether Plaintiff suffered prejudice by the loss. *Living Color*, 2016 WL 1105297. A plaintiff suffers prejudice if the lost evidence was crucial to Plaintiff being able to prove a prima facie case. *Marshall v. Dentfirst*, 313 F.R.D. 691, 697 (N.D. Ga. 2016). Notably, the amended rule does not place the burden of showing prejudice on either party. Fed. R. Civ. P. 37(e)(1), Advisory Committee Notes (2015). Instead, it is left to the discretion of the Court to best assess prejudice on a case-by-case basis. *Id.* Because the information was deleted, Plaintiff will never be able to prove with certainty what was deleted or the severity of the prejudice to prove Plaintiff's claims. *See Alabama Aircraft Industries v. The Boeing Co.*, No. 2:11-cv-03577-RDP, 2017 WL 930597 *12 (N.D. Ala. Mar. 9, 2017) ("only the party that engaged in the destruction knows how much prejudice has been caused (or potentially caused)") (citation omitted); *see also Richards v. Healthcare Res. Grp., Inc.*, No. 2:15-CV-134-RMP, 2016 WL 7494292, at *4 (E.D. Wash. Sept. 29, 2016) *quoting Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ("because 'the relevance of ... [destroyed] documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'").

The extent of support to Plaintiff's claims contained in DeSantis' text messages and those of others can never be known because they were not adequately preserved for over two years. More importantly, Plaintiff bears the burden to prove that his protected activity was a contributing factor for his demotion and/or termination and/or that the Defendants' stated reasons for the adverse employment actions are pretextual. Even a single text could provide dispositive proof of Defendants' retaliatory intent and/or that Plaintiff's protected activity contributed to his demotion and/or termination. Such evidence would be probative to Plaintiff's Sarbanes-Oxley and whistleblower retaliation claims. For example, one way Plaintiff can prove his claims is evidence of retaliatory motive of the management officials involved. Management routinely communicated with each other through text messages, including texts about Plaintiff. Of the texts that were produced, at least one conversation between Horne and DeSantis, two Defendants involved in the decision to take adverse action against Plaintiff, calls into question whether additional messages crucial to showing Defendants' motivation were exchanged but lost.[9] In addition, Plaintiff can prove retaliation by rebutting Defendants' stated reasons for his termination. Certainly, text messages rebutting Medtronic's stated reasons that Plaintiff was insubordinate and failed to do as instructed would be vital to proving Plaintiff's claim. Likewise, the lost text messages may have contained admissions by these Defendants directly refuting their stated reasons. As such, Plaintiff has demonstrated a direct nexus between the missing text messages and his claims. Because critical evidence is missing, Plaintiff has been unduly prejudiced. *See McQueen*, 2016 WL 6988820, at *4 (finding lost

---

[9] Plaintiff can provide the text records upon request from the Court as Defendants claim the reports are confidential and designated as such. Plaintiff does not agree that the reports are confidential; however, in an abundance of caution, Plaintiff did not make the text reports exhibits to this motion.

ESI caused prejudice and noting that it is impossible to determine how critical the records were to the plaintiff's claim).

### b. Defendants' conduct constitutes an intent to deprive Plaintiff of critical evidence warranting sanctions.

Other courts in this Circuit have analyzed the intent to deprive standard Rule 37(e)(2) under the Eleventh Circuit's bad faith standard. *See Living Color*, 2016 WL 1105297, at *6 ("the "'intent to deprive' standard under Rule 37(e)(2) may very well be harmonious with the 'bad faith' standard previously established by the 11th Circuit") (citing *Managed Care Solutions*, 736 F. Supp. 2d at 1323.); *Alabama Aircraft Industries, Inc.*, 2017 WL 930597, at *15. The following constitutes circumstantial evidence of bad faith:

> 1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; 2) the spoliating party engaged in an affirmative act causing the evidence to be lost; 3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and 4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Managed Care Solutions, Inc.*, 736 F.3d at 1323.

Defendants' failure cannot be mere unawareness of the importance of text messages in this case. Plaintiff issued a litigation hold letter to all Defendants specifying the need to preserve text messages. Plaintiff then served Defendants with discovery requests for production, again specifying the need to produce text messages. Not only did Defendants fail to review and timely produce text messages, they failed to adequately preserve them. Defendants' conduct constitutes an intentional disregard for the duty to preserve evidence. Failure to ensure adequate preservation until October 2016, over two years since litigation hold

notices were sent and over a year since the litigation commenced, begs the question whether something more nefarious occurred.

Nor was the preservation of text messages difficult or expensive. Preservation of text messages from an iPhone, for example, only requires providing the phone to a computer forensics specialist for a few hours at minimal cost. Medtronic has its own forensic team to perform these duties in house. Yet, Defendants failed to utilize these services and only did so after the Court compelled them to produce text messages. Thus, Defendants' actions were not merely negligent, especially when it had all the necessary tools at their disposal to ensure proper preservation.

Moreover, Defendants have not credibly explained why such text messages were destroyed and/or not adequately preserved after they knew about the duty to do so. This warrants this Court finding that Defendants acted with the intent to deprive Plaintiff of this critical evidence. *See Alabama Aircraft*, 2017 WL 9300597, at *15 (finding there was an intent to deprive where the destruction was unexplained coupled with blatantly irresponsible behavior by departing from preservation procedures and granting an adverse inference jury instruction and attorneys' fees in prosecuting the motion). Because the information is lost, Plaintiff and the Court are left to speculate as to why the data was destroyed.

As outlined above, Defendants intentionally deprived Plaintiff of relevant text message evidence with a bad faith disregard for the risk of spoliation. Accordingly, appropriate sanctions must be entered against Defendants.

    **c.**    **An award of sanctions is appropriate.**

Because Defendants intentionally deprived Plaintiff of text messages, it is appropriate for this Court to award sanctions under Rule 37(e)(2). *See Alabama Aircraft Industries, Inc.*, 2017 WL 930597, at *16 (awarding an adverse inference instruction and reasonable attorney's fees as an appropriate sanction under Rule 37(e)(2)). More specifically, Plaintiff seeks an adverse inference instruction to the jury at trial that the lost text messages were unfavorable to Defendants, Plaintiff's attorneys' fees and costs in prosecuting this motion, and any other sanction this Court deems appropriate.

However, at a very minimum, should the Court find that there was no intent to deprive and that Plaintiff was only prejudiced by the loss, Plaintiff seeks that this Court order the following curative measures: denial of Defendants' dispositive motion, allowing Plaintiff to present to the jury at trial evidence of Defendants' failure to preserve, allowing Plaintiff to argue inferences to the jury because of Defendants' failure to preserve text message evidence, and awarding Plaintiff his attorneys' fees and costs incurred in prosecuting this motion. *McQueen v. Aramark Corporation*, No. 2:15-CV-492-DAK-PMW, 2016 WL 6988820 (D. Utah Nov. 29, 2016) (court found deleted records prejudiced the other party and ordered that the party be permitted to present evidence to the jury regarding the spoliation of ESI and other documentary evidence and to argue any inferences to the jury as well as awarding attorneys' fees and costs to the moving party); *Christou v. Beatport, LLC, et al*, No. 1:10-cv-02912-RBJ-KMT, 2013 WL 248058 (D. Colo. Jan. 23, 2013) (allowing the prejudiced party to introduce evidence at trial of the failure to preserve and argue inferences to the jury where other party failed to preserve text messages after receiving a litigation hold letter to preserve text messages).

**CERTIFICATE OF CONFERRAL**

In accordance with Local Rule 3.01(g), Plaintiff's counsel conferred with Defendants' counsel about this motion, and Defendants oppose the relief sought herein.

**CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant this motion and:

A.    Issue sanctions in the form of an adverse inference instruction and an award of attorneys' fees and costs against Defendants for spoliation pursuant to Federal Rule of Civil Procedure 37(e);

B.    Or in the alternative, deny Defendants' dispositive motion, allow Plaintiff to present to the jury at trial evidence of Defendants' failure to preserve, allow Plaintiff to argue inferences to the jury because of Defendants' failure to preserve text message evidence, and award Plaintiff his attorneys' fees and costs incurred in prosecuting this motion; and

C.    All other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Yvette D. Everhart
Cynthia N. Sass
Florida Bar No. 0691320
Yvette D. Everhart
Florida Bar No. 0036960
Joshua R. Kersey
Florida Bar No. 0087578
**SASS LAW FIRM**
601 West Dr. Martin Luther King Jr. Blvd.
Tampa, Florida 33603
Telephone: (813) 251-5599

Facsimile: (813) 259-9797
Email: csass@sasslawfirm.com
   yeverhart@sasslawfirm.com
   jkersey@sasslawfirm.com

and

John C. Davis
Florida Bar No. 827770
**LAW OFFICE OF JOHN C. DAVIS**
623 Beard Street
Tallahassee, Florida 32306-6321
Phone: (850) 222-4770
Fax: (850) 222-3119
Email:  john@johndavislaw.net

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of May, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael R. Whitt, Esquire at MWhitt@RobinsKaplan.com

Jeffrey S. Gleason, Esquire at JGleason@RobinsKaplan.com

Christopher W. Madel, Esquire at CMadel@RobinsKaplan.com

Amira A. ElShareif, Esquire at AElShareif@RobinsKaplan.com


/s/ Yvette D. Everhart
Attorney