# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| JOHN BURNS, | Case No. 8:15-cv-2330-EAK-TBM |
| Plaintiff, | **Dispositive Motion** |
| v. | |
| MEDTRONIC, INC., NEAL HORNE, MIKE MATHIAS, and CLAYTON DESANTIS, | |
| Defendants. | |

## Defendants' Joint Amended Motion for Summary Judgment and Incorporated Memorandum of Law in Support

Pursuant to Federal Rule of Civil Procedure 56, Defendants Medtronic, Inc., Neal Horne, and Mike Mathias, by and through counsel, and Defendant Clayton DeSantis, by and through counsel, respectfully move for summary judgment on John Burns's claims, as set forth in Defendants' Incorporated Memorandum of Law, Statement of Undisputed Facts, the supporting Declarations and attached Exhibits, the pleadings on file, and all files, records, and proceedings herein.

## Introduction

Medtronic moved John Burns out of his role as a Sales Representative and into a supporting role as a Clinical Specialist because his sales had plummeted and

Medtronic's customers were complaining about him. Burns was later terminated because he repeatedly violated the express conditions of his employment. There is no dispute about either of these points. There is also no evidence to suggest that either employment decision was driven in any way by retaliatory motives. Indeed, Burns could not describe a single time, before his demotion, when he reported to any of the Defendants the conduct about which he claims to have blown the whistle.

The absence of any evidence to support Burns's claims justifies summary disposition. But Burns's testimony makes that conclusion all the more inevitable. To prevail on his Sarbanes-Oxley claim, Burns must establish that he reasonably believed that Defendants violated a federal law relating to fraud against Medtronic's shareholders, and that such violation was or would have been "material" to them. He confirmed at his deposition that he had no such belief—not even subjectively, much less a belief that was objectively reasonable. Rather, he admitted that he knew all along that his complaints would have no impact on shareholders, Medtronic's financial stability, or Medtronic's contracts with Medicare. Burns's admissions should perhaps come as no surprise: he had already reported much of the same conduct to the U.S. Department of Justice (and this Court) as a relator in a False Claims Act suit, and the government showed no interest in his claims, which he voluntarily dismissed. Burns has known at least

since then that his allegations, even if true, would not and could not possibly result in harm to Medtronic's shareholders. And he admitted it.

Because no reasonable jury could find for Burns on either of his two claims, this Court should grant summary judgment for Defendants Medtronic, Inc., Clayton DeSantis, Neal Horne, and Mike Mathias.

## Facts

Defendants have set forth their "Statement of Undisputed Facts" in a separate filing that accompanies this Motion for Summary Judgment and Incorporated Memorandum of Law.

## Argument

Summary judgment is warranted when there are no disputed issues of material fact. Fed. R. Civ. P. 56(c). A trifling factual dispute does not preclude a grant of summary judgment; rather the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). For factual issues to be "genuine," the evidence must be such "that a reasonable jury could return a verdict for the non-movant" and "they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citation omitted).

Because the undisputed record does not, cannot, and could not support a verdict in Burns's favor, the Court should grant summary judgment for all Defendants as to all claims.

## I.   The record does not support a SOX claim.

To prove his SOX claim, Burns must show that: "(1) he engaged in protected activity; (2) the employer knew of the protected activity; (3) he suffered an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action." *Johnson v. Stein Mart, Inc.*, No. 3:06-cv-341-J-33TEM, 2007 U.S. Dist. LEXIS 44579, at *10 (M.D. Fla. June 20, 2007), *aff'd*, 440 F. App'x 795 (11th Cir. 2011). Burns cannot do so.

### A.   Burns did not engage in a protected activity under SOX.

Burns cannot establish that he engaged in a protected activity because the information that Burns claims to have reported does not qualify for whistleblower protections. [1]

---

[1]   As noted by this Court in its decision on Defendants' Motion to Dismiss, 17 C.F.R. § 229.303, cited in Burns's First and Second Amended Complaints [Docs. 29, 53], was not a basis for Burns's SOX claim and was "referenced only to substantiate his objective belief of shareholder fraud." [Doc. 52.] Defendants, therefore, do not address this provision as a separate claim. Regardless, Burns testified that he does not believe that the conduct he allegedly complained about would subject Medtronic to fines or cause Medtronic to lose contracts with Medicare. (Statement of Undisputed Facts [hereinafter "SUF"] ¶ 36 (citing Gleason Decl., Ex. 1 at 13:5–16:8).)

SOX was not intended to and does not protect all employee-whistleblowers. *Johnson v. Stein Mart, Inc.*, 440 F. App'x 795, 800 (11th Cir. 2011) (quoting *Day v. Staples, Inc.*, 555 F.3d 42, 54–55 (1st Cir. 2009)). Rather, the statute "restricts the employee's protection to information only about certain types of conduct," which fall into "three broad categories," only one of which is even arguably relevant here, according to Burns's own Complaint: "a violation of any provision of federal law relating to fraud against shareholders." *Id.*; [Doc. 53]; *see also Burns v. Medtronic, Inc.*, No. 8:15-cv-2330-T17-TBM, 2016 U.S. Dist. LEXIS 90435, at *10 (M.D. Fla. July 12, 2016). A SOX plaintiff like Burns must subjectively believe that the reported conduct violates a law relating to fraud against shareholders, and that belief must be objectively reasonable. *Johnson*, 2007 U.S. Dist. LEXIS 44579, at *10. Burns doesn't actually (subjectively) believe that the reported conduct violated such a law. And, even if he did, it wouldn't be a reasonable belief.

In its Order denying Defendants' Motion to Dismiss [Doc. 52], this Court held that the case could proceed to discovery because Burns had properly alleged an objectively reasonable belief of shareholder fraud because "he believes the practices of Medtronic would subject the company to significant fines for fraud and illegal kickbacks" and because Medtronic could "lose its contracts with Medicare." *Burns*, 2016 U.S. Dist. LEXIS 90435, at *12–13. But, Burns has since

admitted that he does not—and did not, and never did—believe that the conduct he

allegedly complained about, if true, would subject Medtronic to fines or cause

Medtronic to lose its contracts with Medicare:

> Q:          [L]et's say today the United States Government finds out
>             about the allegations that you have in your complaint, is it
>             your expectation that a likely outcome of that is that the
>             Medicare contracts that Medtronic has will be canceled?
>
> Burns:      My opinion, I would say, no. I just think Medtronic is too big
>             and has too much influence.
>
> …
>
> Q:          You don't know one way or another whether Medtronic has a
>             contract with Medicare?
>
> Burns:      No, I don't, sir.
>
> Q:          [I]t's your opinion today that if the United States Government
>             learned of the allegations in your complaint Medtronic's
>             relationship with Medicare and its ability to participate in the
>             Medicare program would be unaffected.
>
> Burns:      I've never seen where it's been affected in the past with
>             issues, so I would probably say, no, it wouldn't affect.
>
> …
>
> Q:          Was that your opinion in 2013?
>
> Burns:      Yes, sir.
>
> Q:          Was that your opinion in 2012?
>
> Burns:      Yes, sir.

| Q: | Do you believe today that the conduct that you describe in your complaint will have a significant financial impact on Medtronic's financial stability? |
|---|---|
| Burns: | No. |
| Q: | Have you ever believed that the conduct that you describe in your complaint will have a significant financial impact on Medtronic's financial stability? |
| Burns: | No. |
| Q: | Do you believe that the conduct that you describe in your complaint will directly affect Medtronic's shareholders? |
| Burns: | No. |
| … | |
| Q: | I'm now asking you whether at any point in time have you believed that the conduct that you describe in your complaint in this case will directly affect Medtronic's shareholders? |
| Burns: | No. |

(SUF ¶ 36 (citing Gleason Decl., Ex. 1 at 13:5–16:8).)

Burns did not, ever, have either a subjective or objectively reasonable belief that Medtronic's shareholders would be defrauded by the misconduct that he allegedly reported. He testified precisely and unequivocally to the contrary. Thus no reasonable jury could find in his favor, and his SOX claim fails.

### B.    Burns did not report any alleged misconduct before his demotion.

Setting the foregoing failures aside, to succeed on his SOX claim, Burns also must prove that he reported misconduct. *Marshall v. Northrup*, No. 2005-SOX-0008, 2005 DOLSOX LEXIS 63, at *6–7 (ALJ June 22, 2005) ("Protected activity is defined under SOX as reporting an employer's conduct . . . ."). And he must demonstrate that "the reported information [had] a certain degree of specificity [and that he] state[d] particular concerns, which, at the very least, reasonably identify a respondent's conduct that the complainant believes to be illegal." *Lerbs v. Buca Di Beppo, Inc.*, No. 2004-SOX-8, 2004 DOLSOX LEXIS 65, at *33–34 (ALJ June 15, 2004) (citation omitted). Because he cannot meet that burden with respect to the concerns alleged here, summary judgment is warranted as to the first ensuing employment action, his demotion. *See Gale v. United States Dep't of Labor*, 384 Fed. Appx. 926, 930 (11th Cir. 2010) (granting summary judgment because "[plaintiff] could not recall ever communicating any concerns that the ASAP program, as it was ultimately implemented, violated or potentially violated any law or regulation.").

There is no dispute: Burns did not report any of the misconduct that forms the basis of his SOX claim to anyone at Medtronic before his transition to Clinical Specialist in early 2014. Every year between 2011 and 2014, he made an annual certification that he had not made such a report. (SUF ¶ 26 (citing Rich Decl., Ex.

8

2).) Burns confirmed this in his deposition. (SUF ¶ 26 (citing Gleason Decl., Ex. 1 at 165:23–167:15, 308:8–310:4).)

Burns's alleged concerns were first communicated to Medtronic in a letter from his counsel on January 27, 2014. (*See* Second Am. Compl. [Doc. 53] ¶ 58.) Because that letter arrived (months) after Burns was informed of the demotion, it cannot serve as a basis for a SOX claim as to that employment decision.

**C.**   **Burns was terminated due to his abject failure to perform his role according to his superiors' instructions, his agreement thereto, and because he demoralized customers and colleagues by antisocial behavior.**

Again setting aside the shareholder-fraud deficiencies, Defendants turn to the last possible basis for a SOX claim, Burns's termination—which, admittedly, did follow the letter from his lawyer. But timing is not dispositive: an employer is entitled to summary judgment under SOX where it demonstrates "by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of the protected activity." *Johnson*, 2007 U.S. Dist. LEXIS 44579, at *14. As in *Johnson*, summary judgment is warranted here because Burns's poor job performance justified his demotion and termination. *Id.* This Court's reasoning in *Johnson* forecloses any other conclusion in this case:

> While the Court is obligated to view the Plaintiff's evidence in the light most favorable to her, [Plaintiff] has failed to create a disputed issue of fact as to whether she would have been terminated regardless of her protected activity. [Plaintiff] has only offered her own conclusions and interpretations of the facts of this case, which

> are not sufficient to question [Defendant-employer's] personnel
> decision. It must be emphasized that an employer has the right to
> make an employment decision for a multitude of reasons: It can be
> for the right reason, for the wrong reason, or for no reason. The
> employer is only prohibited from taking an adverse job action for an
> impermissible reason. The Court finds that [Defendant] would have
> terminated [Plaintiff's] employment even in the absence of her
> protected activity, and summary judgment should be granted on this
> count.

*Id.* at *16–17 (quotation and citations omitted).

As in *Johnson*, Plaintiff was transitioned to the Clinical Specialist position and terminated for numerous reasons, none of which were impermissible. Before Medtronic transitioned Plaintiff to the Clinical Specialist position, his sales decreased precipitously (SUF ¶ 2 (citing Horne Decl., Ex. 4)) and multiple customers complained about him (SUF ¶¶ 3–5 (citing Horne Decl., Ex. 1 at 39:12–40:15, 45:1–52:21; Mathias Decl., Ex. 1 at 82:5–89:17)).

Then, following his demotion and as a Clinical Specialist, Burns (1) failed to follow instructions that had been provided multiple times (SUF ¶¶ 12–19 (citing Gleason Decl., Ex.1 at 281:10–282:25, 290:19–23; *id.*, Exs. 2, 3; Horne Decl., ¶¶ 12–16; *id.*, Exs. 5, 6)); (2) was accused of bullying and intimidating a Sales Representative in another district (SUF ¶ 20 (citing Horne Decl. ¶ 12; DeSantis Decl., Ex. 2; *id.*, Ex. 1 at 76:23–78:9; 136:5–138:13)); and (3) was seen putting defamatory bumper stickers about a competitor on customers' cars (SUF ¶ 21 (citing Gupta Decl., Ex. 1, 2)).

Medtronic demoted Burns because of his poor performance as a Sales Representative and terminated him because he repeatedly violated the express conditions of his employment as a Clinical Specialist and engaged in behavior unbecoming a professional. The undisputed factual record simply does not permit another conclusion. As in *Johnson*, summary judgment in favor of Defendants is therefore warranted.

### D.     The temporal proximity between Burns's purported reports and his transition and termination are too distant.

The proximity in time between the purported protected activity and unfavorable personnel actions often may be logically relevant. *See Johnson,* 2007 U.S. Dist. LEXIS 44579, at *12–13 (citation omitted). While temporal proximity can establish causation between a protected activity and an unfavorable employment action, that proximity must be "very close." *Id.* at *13 (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Time measured in months is generally insufficient. *See, e.g.*, *Johnson,* 2007 U.S. Dist. LEXIS 44579, at *13 (holding that the twenty-month period between plaintiff's first complaint and her termination did not establish a causal link, although there was only a one-month period between plaintiff's "final warning" and her second reported complaint) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (holding that three months between protected activity and retaliation did not create sufficient temporal link)); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th

Cir. 2001) (same, 3.5 months). *Cf., e.g., Stone & Webster Eng'g Corp. v. Herman*, 115 F.3d 1568, 1573 (11th Cir. 1997) (finding that a one-day separation between protected conduct and demotion raised an inference of causation). The Supreme Court has expressly held that longer periods, such as twenty months, suggest "no causality at all." *Clark County Sch. Dist.*, 532 U.S. at 274.

To be clear, Burns has not provided any evidence that he actually reported any alleged and particularized misconduct until January 27, 2014. But he claims that he generally mentioned misconduct as early as 2010 and throughout 2013. (SUF ¶ 27 (citing Second Am. Compl. [Doc. 53] ¶ 83(a); Gleason Decl., Ex. 1 at 53:22–54:2).) If Burns told his supervisors about the alleged violations as early as 2010, he cannot, as a matter of law, establish a causal link between his reporting of misconduct and his transition (in early 2014) or termination (in May 2014). *See Clark County Sch. Dist.*, 532 U.S. at 274; *Johnson,* 2007 U.S. Dist. LEXIS 44579, at *13.

Likewise, even if Burns had reported alleged particularized misconduct as late as throughout 2013, his transition and termination were still at least one or, more likely, several months after the report. Burns is unable, as a matter of law, to establish a temporal link between his alleged reporting of misconduct and his transition or termination. And proximity is just that: proximity. It does not and cannot erase Burns's dismal employment record. *(See, e.g.*, SUF ¶¶ 2–6, 12–13,

12

16–23 (citing Horne Decl. ¶¶12–16; *id.*, Ex. 1 at 39:12–40:15, 45:2–52:21; *id.*,

Exs. 4–6; Mathias Decl., Ex. 1 at 82:5–89:17; DeSantis Decl. ¶¶7–9; Gleason

Decl., Ex. 2; Gupta Decl., Exs. 1–2).)

## II.    The record does not support a Florida Whistleblower Act claim.

To prevail on his claim under the Florida Whistleblower Act, Florida Statute

§ 448.101, *et seq.*, Burns "must prove (1) that []he engaged in statutorily protected

expression; (2) []he suffered an adverse employment action; and (3) the adverse

employment action was causally linked to the statutorily protected activity." *White*

*v. Purdue Pharma, Inc.*, 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005). Burns is

unable to establish at least two of the elements.

### A.    Burns cannot prove that he engaged in statutorily-protected expression as defined under the Act.

This Court previously held that Burns must establish that he had a good-

faith, objectively reasonable belief that the conduct he allegedly objected to was

illegal.[2] He cannot meet that burden. Burns has alleged that he reported and

---

[2] *See Burns*, 2016 U.S. Dist. LEXIS 90435, at *15 (citing *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 912–13 (Fla. Dist. Ct. App. 4th Dist. 2013). Medtronic maintains that Burns must prove that he objected to an actual violation of law to succeed under the FWA. *See Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458 (Fla. Dist. Ct. App. 2d Dist. 2015). Medtronic here preserves its position that *Kearns*, rather than *Aery*, controls.

Furthermore, in February 2017, another judge in this district held that it was "persuaded that the Supreme Court of Florida would adopt *Kearns* rather than *Aery*." *Graddy v. Wal-Mart Stores East, LP*, No. 5:16-cv-9-Oc-28PRL, 2017 U.S. Dist. LEXIS 20676, at *9 (M.D. Fla. Feb. 14, 2017).

refused to engage in practices that he contends violated two statutes[3]: (1) the Federal Anti-Kickback statute; and (2) the False Claims Act. But the record contains no evidence that he had a good-faith, objectively reasonable belief that the conduct he purportedly objected to violated any of these laws.

### i.   Burns lacks a good-faith, objectively reasonable belief that Medtronic violated the False Claims Act.

Burns cannot credibly contend that he believed that the conduct at issue would have violated the False Claims Act. He previously filed an FCA case against Medtronic based on many of the same allegations. *See United States ex rel. Burns v. Medtronic, et al.*, Case No. 8:10-cv-01851 [Doc. 1]. And the allegations did not result in a finding that the statute was violated. Instead, Burns, himself, voluntarily dismissed his case. [*Id.* at Doc. 13.]

### ii.   Burns lacks a good-faith, objectively reasonable belief that Medtronic violated the Anti-Kickback Statute.

Nor could a reasonable jury find that Burns had a good-faith belief that Medtronic violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) by allowing Sales Representatives to fish, ski, and participate in other extracurricular activities with doctors.

---

[3] As explained further below, Burns informed Medtronic that he no longer contends that Medtronic violated the FWA by violating the Physician Sunshine Act, 42 C.F.R. parts 402 and 403 or Medtronic's Corporate Integrity Agreement. (*See* Gleason Decl., Ex. 8.)

*First*, Burns encouraged these types of activities, even attempting to facilitate fishing trips between customers and Horne (SUF ¶ 28 (citing Horne Decl., Exs. 2, 3; Gleason Decl., Ex. 1 at 235:21–241:16).) And while Burns testified that he purportedly abided by the Code of Conduct "to a higher level" than others, he admitted to having previously ridden motorcycles with a doctor— but said that it was permissible because he "did not pay for customer's gas." (*Id.* (citing Gleason Decl., Ex. 1 at 229:2–25); *see also* Gleason Decl. Ex. 1 at 163:18– 22.)

*Second*, in other words, social activity without payment is not a kickback. (SUF ¶ 30 (citing Rich Decl., Ex. 1 at 113:7–114:17).) As a former FCA relator, Burns understood that to violate the anti-kickback law, physicians must have received something of value in exchange for referrals to a federal healthcare program. Burns made no attempt to determine whether that, in fact, occurred (it did not), relying instead on publicly available pictures of friends out fishing. (SUF ¶ 29 (citing Gleason Decl., Ex. 1 at 215:14–216:6).) Pictures, obviously, do not generally explain accounting for social outings, much less do they connect such outings to federal healthcare funds. In addition, Medtronic's Business Conduct Standards, which is available to all Medtronic employees, and outlines practices to avoid violations of the AKS and other laws, explicitly states that "employees may participate in recreation or entertainment with a customer" if the activity is modest

and if "the customer pays for the entire cost of his/her participation including meals and refreshments during the activity." (SUF ¶ 30 (citing Rich Decl., Ex. 3).) Burns certified every year from 2011 through 2014 that he had read and understood the Code of Conduct, which requires him to comply with the Business Conduct Standards. (SUF ¶ 26 (citing Rich Decl., ¶¶ 6–8; *id.*, Ex. 2); *see also* Gleason Decl., Ex. 1 at 162:12–163:17, 308:8–310:4.) Had Burns made any effort to review the Code and Business Conduct Standards—as he was required to do—it would have alleviated any concern (not actually demonstrated via the many company vehicles to raise such a concern) that fishing and skiing trips, where everyone pays his own way, violate the AKS or Medtronic's internal policies. Burns is judging the book by its cover, and that is the opposite of a good-faith, objectively reasonable belief.

### iii.    Burns no longer contends that Medtronic violated the Florida Whistleblower Act by violating the Physician Sunshine Act or Medtronic's Corporate Integrity Agreement.

Following the parties' May 30, 2017 meet and confer, Burns informed Medtronic that he no longer contends that Medtronic is liable under the FWA for violating the Physician Sunshine Act, 42 C.F.R. parts 402 and 403 or Medtronic's Corporate Integrity Agreement. (Gleason Decl., Ex. 8.) Nor could he prove these allegations if he tried. (*See* SUF ¶ 29 (citing Gleason Decl., Ex. 5 (where AdvaMed informed Burns that "[d]epending on the circumstances, it may be

appropriate for an employee or agent of a Company to engage in certain activities with a Health Care Professional if each pays his or her own way."))); *see also Hersh & Hersh v. S HHS*, No. C 06-4234-PJH, 2008 U.S. Dist. LEXIS 26237, at *18 (N.D. Cal. Mar. 31, 2008) (explaining that a corporate integrity agreement is a voluntary contract).

Because Burns has, in effect, withdrawn his claims that Medtronic violated the FWA by violating the Physician Sunshine Act and Corporate Integrity Agreement, the Court should grant summary judgment on these claims.

### B.     Burns's adverse employment action was not causally linked to a statutorily protected activity.

The principles of temporal link and causation, discussed above in the federal context, apply in the same way in Whistleblower Act cases. *See Hamm v. Johnson Bros.*, No. 6:06-cv-1348-Orl-28KRS, 2008 U.S. Dist. LEXIS 54624, at *19–20 (M.D. Fla. July 17, 2008) (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).

As with the SOX claim, Burns cannot show temporal proximity, and he cannot establish that his alleged—and highly generalized—reporting had anything to do with his (much) later demotion and termination.

### Conclusion

Burns has been litigating against Medtronic for almost a decade. This lawsuit cleverly attempts to convert speculative kickback (and False Claims Act)

concerns about which Burns knew few facts and did no investigation, first voiced

***after*** his demotion, into SOX (or Whistleblower Act) claims, when he was

terminated due simply to incompetence and obstreperousness. Burns never had

any actual, much less objectively reasonable, reason to believe that wrongdoing

had occurred in the first place, or that it related in any way to fraud against

shareholders. This Court should enter judgment for the Defendants.

Dated: June 2, 2017              **Robins Kaplan LLP**

                         By: */s/Jeffrey S. Gleason*
                             Jeffrey S. Gleason (admitted *pro hac vice*)
                             Amira A. ElShareif (admitted *pro hac vice*)

                             Robins Kaplan LLP
                             800 LaSalle Avenue, Suite 2800
                             Minneapolis, Minnesota 55402-2015
                             Telephone: (612) 349-8500
                             Fax: (612) 339-4181
                             JGleason@RobinsKaplan.com
                             AElShareif@RobinsKaplan.com

                             Michael R. Whitt
                             (Fla. Bar No. 0725020)
                             Robins Kaplan LLP
                             Suite 201
                             711 5th Ave S
                             Naples, FL 34102
                             Telephone: (239) 433-7707
                             Fax: 239-433-5933
                             MWhitt@RobinsKaplan.com

                             *Attorneys for Defendants Medtronic, Inc.,*
                             *Neal Horne, Mike Mathias, and Clayton*
                             *DeSantis*

**Zuckerman Spaeder LLP**

By:  */s/ Marcos E. Hasbun*
    (*Signed by Filing Attorney with
    permission of Non-Filing Attorney*)

Marcos E. Hasbun
Fla. Bar No. 145270
Sara Alpert Lawson
Fla. Bar No. 43177
Zuckerman Spaeder LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010
Fax: (813) 223-7961
mhasbun@zuckerman.com
slawson@zuckerman.com

*Attorneys for Clayton DeSantis*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| JOHN BURNS, | Case No. 8:15-cv-2330-EAK-TBM |
| Plaintiff, | |
| v. | **Certificate of Service** |
| MEDTRONIC, INC., NEAL HORNE, MIKE MATHIAS, and CLAYTON DESANTIS, | |
| Defendants. | |

I HEREBY CERTIFY that on June 2, 2017, I, Jeffrey S. Gleason,

electronically filed the foregoing with the Clerk of the Court by using the

CM/ECF system which will send a notice of electronic filing to:

Cynthia N. Sass
Yvette D. Everhart
Joshua R. Kersey
Law Offices of Cynthia N. Sass, P.A.
601 W. Dr. Martin Luther King Jr.
Blvd.
Tampa, FL 33603
csass@sasslawfirm.com
yeverhart@sasslawfirm.com
jkersey@sasslawfirm.com

Marcos E. Hasbun
Sara Louise Alpert Lawson
Zuckerman Spaeder LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, FL 33602
mhasbun@zuckerman.com
slawson@zuckerman.com

John C. Davis
Law Office of John C. Davis
623 Beard Street
Tallahassee, Florida 32306-6321
john@johndavislaw.net

20

Dated: June 2, 2017   **Robins Kaplan LLP**

By: */s/Jeffrey S. Gleason*
  Jeffrey S. Gleason (admitted *pro hac vice)*
  Amira A. ElShareif (admitted *pro hac vice*)

  Robins Kaplan LLP
  800 LaSalle Avenue, Suite 2800
  Minneapolis, Minnesota 55402-2015
  Telephone: (612) 349-8500
  Fax: (612) 339-4181
  JGleason@RobinsKaplan.com
  AElShareif@RobinsKaplan.com

  Michael R. Whitt
  (Fla. Bar No. 0725020)
  Robins Kaplan LLP
  Suite 201
  711 5th Ave S
  Naples, FL 34102
  Telephone: (239) 433-7707
  Fax: 239-433-5933
  MWhitt@RobinsKaplan.com

  *Attorneys for Defendants Medtronic, Inc.,*
  *Neal Horne, Mike Mathias and Clayton*
  *DeSantis*