UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JOHN BURNS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC., NEAL HORNE, MIKE MATHIAS, and CLAYTON DESANTIS,<br><br>　　　　　Defendants. | Case No. 8:15-cv-2330-EAK-TBM |

## Statement of Undisputed Facts

1. As a Sales Representative, John Burns was responsible for selling Medtronic products. (Gleason Decl., Ex. 1 at 149:5–18.) His job (and compensation) was conditioned on his performance. (*Id.*)

2. Beginning in 2012, Burns's year-over-year sales fell precipitously, and decreased by 55% from quarter three of fiscal year 2013 to quarter three of fiscal year 2014. (Horne Decl., Ex. 4.)

3. As Burns's sales dropped, his manager, Neal Horne, began receiving complaints about Burns from Medtronic's physician-customers. (*Id.* ¶¶ 7–8.)

4. Horne learned that one customer was complaining that Burns was spreading rumors that the physician had purchased breast implants for a sales representative of a competitor. (Horne Decl., Ex. 1 at 39:12–40:15; *id.* ¶ 7.)

5. Another physician confronted Horne and Mike Mathias (Horne's boss), reporting that Burns had threatened him and that Burns was no longer permitted in his office. (*Id.* ¶ 8; *id.*, Ex. 1 at 45:1–52:21; Mathias Decl. ¶ 6; *id.*, Ex. 1 at 82:5–89:17.)

6. Burns's threatening behavior was not directed only at physician-customers, but also toward his colleagues, several of whom complained about Burns and expressed concerns about their safety. (Horne Decl., Ex. 1 at 89:11–90:12, 184:23–185:25; *see also* DeSantis Decl., Ex. 1 at 43:5–46:16; 136:5–138:13.)

7. In early November 2013, Horne met with Burns to discuss Burns's subpar performance and complaints about him. (Horne Decl. ¶ 10.)

8. In that discussion, instead of termination, Horne offered Burns the chance to remain employed at Medtronic as a Clinical Specialist, whose job it was to support Sales Representatives in the region; Burns eventually accepted. (*Id.*)

9. In his new role, Burns would report to Clayton DeSantis, the District Services Manager for the Southwest Florida District. (DeSantis Decl. ¶ 4.)

10. In February 2014, DeSantis and Horne met with Burns to discuss his responsibilities as a Clinical Specialist. (Gleason Decl., Ex. 1 at 276:10–21.)

11. Horne then sent Burns an email memorializing Burns's obligations:

- Burns would be directed by the Sales Representatives he would be supporting—Jesse Turcott, Brian Haworth—or by DeSantis;

- Burns would discontinue all sales activities unless directed otherwise by Turcott, Haworth, or DeSantis;

- All outgoing customer communications were to be discontinued; and

- Burns would direct all incoming customer communications to Turcott via text message.

(*Id.*, Ex. 2.)

12. In the days and weeks that followed, Burns repeatedly flouted these agreed-upon requirements. (*Id.*; Horne Decl. ¶¶ 12–16.)

13. Horne thus sent Burns another email cataloging Burns's transgressions:

- Burns changed his voicemail to direct calls to another Clinical Specialist and not to Turcott as instructed;

- Burns did not forward customer communications directly to Turcott;

- Burns engaged in both patient and customer interactions without notifying anyone; and

- Burns sent invitations to medical procedures using Outlook and Medtronic's calendar system, Salesforce.com, rather than texting or calling Turcott as instructed.

(Gleason Decl., Ex. 2.)

14. The next day, Burns sent an email to Horne re-confirming that he understood his new job duties. (*Id.*, Ex. 7.)

3

15. Shortly thereafter, DeSantis met with Burns—again—to discuss Burns's responsibilities and to reinforce Horne's email. (*See id.*, Ex. 3.) Finally, DeSantis sent Burns an email reiterating the reiteration of the expectations that, by this time, had been articulated multiple times orally and in writing. (*Id.*)

16. But Burns continued to violate the conditions of his new job. (Horne Decl. ¶¶ 12–16; DeSantis Decl. ¶¶ 7–9.)

17. He continued to contact customers without direction from Turcott, Haworth, or DeSantis—failing to even notify them of the communications after the fact. (Horne Decl. ¶ 15; DeSantis Decl. ¶ 9.)

18. Burns sent Outlook invitations—rather than text messages—for customer appointments. (Gleason Decl., Ex. 1 at 281:10–282:25, 290:19–23.)

19. He sent emails to Turcott about customer communications without the information necessary for Turcott to complete his job, and Turcott repeatedly required clarification. (Horne Decl. ¶ 16; *id.*, Exs. 5, 6.) Turcott and DeSantis repeatedly reminded Burns of information to be included in such messages. (Horne Decl. ¶ 15; DeSantis Decl. ¶ 9.)

20. One Sales Representative that Burns was supposed to be supporting reported to Horne that Burns bullied and intimidated her. (Horne Decl. ¶ 12; DeSantis Decl. ¶ 8; *id.*, Ex. 2; *id.*, Ex. 1 at 76:23–78:9, 136:5–138:13.)

21. In early April 2014, Medtronic received an email from St. Jude's in-house counsel alerting it that Burns was seen putting defamatory bumper stickers on physicians' cars (which identified a St. Jude Sales Representative and referred to that Sales Representative as engaging in "embezzlement" and operating a "shaddy[]business" [*sic*]). (Gupta Decl., Exs. 1, 2.)

22. Burns remained in his role through the beginning of May 2014, shortly before which Burns received a customer request for Medtronic devices for several surgeries. (Gleason Decl., Ex. 6.) He emailed the customer asking her to contact Turcott, but he did not copy Turcott on the email or forward it to him as instructed. (*Id.*) And the email address that Burns provided the customer for Turcott was wrong. (*Id.*)

23. Burns was aware of all of the expectations of his Clinical Specialist position and repeatedly failed to abide by them. (Horne Decl. ¶¶ 12–16; *id.*, Exs. 5, 6.)

24. Given his repeated failures to do so, Burns was terminated on May 2, 2014.

25. As a Medtronic employee, Burns was obligated to report any violations of the Code of Conduct. (Rich Decl. ¶ 6.) He could do so anonymously, through the "Voice Your Concern" hotline, or directly to a supervisor or to Human Resources. (*Id.*)

26. Between 2011 and 2014, Burns did not report through any such means the conduct he alleges he reported in this case. For each of those years, Burns certified that he had read and understood Medtronic's Code of Conduct, which required him to comply with Medtronic's Business Conduct Standards. (Rich Decl., ¶ 6; *id.*, Ex. 2; *see also* Gleason Decl., Ex. 1 at 165:23–167:15.) Burns also certified that he was aware of purported violations or suspicions of violations, but had not reported them. (Rich Decl., ¶ 7; *id.*, Ex. 2; *see also* Gleason Decl., Ex. 1 at 165:23–167:15.) Burns confirmed as much during his deposition. (Gleason Decl., Ex. 1 at 308:8–310:4.)

27. Burns claims he generally reported misconduct as early as 2010 and throughout 2013. (Second Am. Compl. ¶ 83(a); Gleason Decl., Ex. 1 at 53:22–54:2.) But, the first instance over that span of years in which Burns claims to have made a specific report is a letter his lawyer sent in late January 2014. That letter, which was marked as subject to Rule 408 of the Federal Rules of Evidence, contained allegations that are nearly identical to this lawsuit's. (Second Am. Compl. ¶ 58; Rich Decl., Ex. 1 at 37:13–19.)

28. Prominent among those allegations, for example, was a claim that certain Sales Representatives went fishing with doctors, which Burns purportedly believes violates the Anti-Kickback Statute and the False Claims Act. (Gleason Decl., Ex. 1, at 86:23–87:6.) Burns, however, attempted to facilitate fishing trips

between customers and Horne. (Horne Decl., Exs. 2, 3; *see also* Gleason Decl., Ex. 1 at 235:21–241:16.) And, Burns admitted to having previously ridden motorcycles with a doctor—but said it was permissible because he did not pay for the customer's gas. (Gleason Decl., Ex. 1, 229:2–25.)

29. Burns confirmed at his deposition that he did nothing to investigate who paid for the fishing trips that he complained of—*i.e.*, whether anything of value was transferred to the physicians—except to contact AdvaMed and ask if fishing with customers was legal under the Physician Sunshine Act. (Gleason Decl., Ex. 1 at 63:2–64:19, 85:17–86:1; 180:1–181:19; *id.*, Ex. 5.) In response, AdvaMed wrote. "[d]epending on the circumstances, it may be appropriate for an employee or agent of a Company to engage in certain activities with a Health Care Professional if each pays his or her own way." (Gleason Decl., Ex. 5.) And, Burns never complained about these activities in his annual Code of Conduct certifications. (Rich Decl., Ex. 2.) Rather, Burns relied on publicly available pictures of colleagues fishing with customers. (Gleason Decl., Ex. 1 at 215:14–216:6.)

30. As Christina Rich, Medtronic's Deputy Chief Compliance officer, testified, Medtronic employees may have personal relationships with physician–customers. Social activities with customers without payment are not kickbacks. (Rich Decl., Ex. 1 at 113:7–114:17.) Further, Medtronic's Business Conduct

Standards—available to all Medtronic employees—outlines practices to avoid violations of the Anti-Kickback Statute and other laws; the Standards explicitly state that "employees may participate in recreation or entertainment with a customer" if the activity is modest and if "the customer pays for the entire cost of his/her participation including meals and refreshments during the activity." (Rich Decl. ¶ 8; *id.*, Ex. 3.)

      31.    Three weeks after being fired, Burns filed a Sarbanes-Oxley Complaint with OSHA. If, after investigating, OSHA had reasonable cause to believe retaliation occurred, it would have notified Medtronic of those findings with a preliminary order providing all necessary relief, including "[r]einstatement with the same seniority status that the employee would have had but for the retaliation; back pay with interest; and compensation for any special damages sustained as a result of the retaliation." *See* Supplemental Information to Procedures for the Handling of Retaliation Complaints Under Section 806 of the Sarbanes-Oxley Act of 2002, 80 Fed. Reg. 43 (Mar. 5, 2015) (codified at 29 C.F.R. pt. 1980).

      32.    By the time Burns was permitted to refile the case in federal court, OSHA had investigated Burns's claims but had not issued any preliminary order or ordered any relief. (Gleason Decl., Ex. 4.)

33. Burns sued in this Court and, since then, has twice amended his Complaint to add new factual allegations. [Docs. 1, 29, 53.]

34. This suit was not the first that Burns filed against Medtronic. In 2010, he sued the company under the False Claims Act based on nearly identical allegations of purportedly illegal conduct as he asserts in this case. *See U.S. ex rel. John Burns v. Medtronic, et al.*, No. 8:10-cv-01851 [Doc. 1].

35. The Department of Justice took no action in response to his allegations, and Burns voluntarily dismissed the case. [*Id.* at Doc. 13.]

36. During his deposition, Burns testified that he does not—and never did—believe that the conduct he allegedly complained about would subject Medtronic to fines, cause Medtronic to lose contracts with Medicare, or affect Medtronic's shareholders. (Gleason Decl., Ex. 1 at 13:5–16:8.)

37. Though Defendants did not learn of the False Claims Act case until after Burns's termination (Mathias Decl. ¶ 9; Horne Decl. ¶ 18; DeSantis Decl. ¶ 12), the case was unsealed on August 19, 2011. *U.S. ex rel. John Burns v. Medtronic, et al.*, No. 8:10-cv-01851 [Doc. 11].

38. Medtronic's share price went up (slightly) the day after Burns's False Claims Act case was unsealed. (NYSE. (2011, Aug. 19–22). Medtronic, Inc. stock quote. Retrieved from http://www.nasdaq.com/symbol/mdt/historical.)

Dated: June 2, 2017 **Robins Kaplan LLP**

By: */s/Jeffrey S. Gleason*
Jeffrey S. Gleason (admitted *pro hac vice)*
Amira A. ElShareif (admitted *pro hac vice*)

Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402-2015
Telephone: (612) 349-8500
Fax: (612) 339-4181
JGleason@RobinsKaplan.com
AElShareif@RobinsKaplan.com

Michael R. Whitt
(Fla. Bar No. 0725020)
Robins Kaplan LLP
Suite 201
711 5th Ave S
Naples, FL 34102
Telephone: (239) 433-7707
Fax: 239-433-5933
MWhitt@RobinsKaplan.com

*Attorneys for Defendants Medtronic, Inc., Neal Horne, Mike Mathias, and Clayton DeSantis*

By:  */s/ Marcos E. Hasbun*
(*Signed by Filing Attorney with permission of Non-Filing Attorney*)

Marcos E. Hasbun
Fla. Bar No. 145270
Sara Alpert Lawson
Fla. Bar No. 43177

Zuckerman Spaeder LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010
Fax: (813) 223-7961
mhasbun@zuckerman.com
slawson@zuckerman.com

*Attorneys for Clayton DeSantis*

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| JOHN BURNS,<br><br>                    Plaintiff,<br>v.<br><br>MEDTRONIC, INC., NEAL HORNE, MIKE MATHIAS, and CLAYTON DESANTIS,<br><br>                    Defendants. | Case No. 8:15-cv-2330-EAK-TBM<br><br>**Certificate of Service** |

I HEREBY CERTIFY that on June 2, 2017, I, Jeffrey S. Gleason, electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

Cynthia N. Sass
Yvette D. Everhart
Joshua R. Kersey
Law Offices of Cynthia N. Sass, P.A.
601 W. Dr. Martin Luther King Jr. Blvd.
Tampa, FL 33603
csass@sasslawfirm.com
yeverhart@sasslawfirm.com
jkersey@sasslawfirm.com

Marcos E. Hasbun
Sara Louise Alpert Lawson
Zuckerman Spaeder LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, FL 33602
mhasbun@zuckerman.com
slawson@zuckerman.com

John C. Davis
Law Office of John C. Davis
623 Beard Street
Tallahassee, Florida 32306-6321
john@johndavislaw.net

Dated: June 2, 2017             **Robins Kaplan LLP**

By: */s/Jeffrey S. Gleason*
   Jeffrey S. Gleason (admitted *pro hac vice)*
   Amira A. ElShareif (admitted *pro hac vice*)
   Robins Kaplan LLP
   800 LaSalle Avenue, Suite 2800
   Minneapolis, Minnesota 55402-2015
   Telephone: (612) 349-8500
   Fax: (612) 339-4181
   JGleason@RobinsKaplan.com
   AElShareif@RobinsKaplan.com

   Michael R. Whitt
   (Fla. Bar No. 0725020)
   Robins Kaplan LLP
   Suite 201
   711 5th Ave S
   Naples, FL 34102
   Telephone: (239) 433-7707
   Fax: 239-433-5933
   MWhitt@RobinsKaplan.com

   *Attorneys for Defendants Medtronic, Inc., Neal Horne, Mike Mathias, and Clayton DeSantis*