**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JOHN BURNS,**

      **Plaintiff,**

**v.**                                                         **Case No. 8:15-cv-2330-T-17TBM**

**MEDTRONIC, INC., NEAL HORNE,
MIKE MATHIAS, and CLAYTON
DESANTIS,**

      **Defendants.**
                                         /

## O R D E R

THIS MATTER is before the Court on **Plaintiff's Motion for Sanctions for Spoliation Against Defendants Medtronic, Inc. and Clayton DeSantis** (Doc. 86), Defendant Medtronic, Inc.'s response in opposition (Doc. 93), and Defendant Clayton DeSantis' response in opposition (Doc. 109). A hearing was conducted on August 1, 2017.

**I.**

By the motion, Plaintiff claims Defendants, Medtronic and former Medtronic employee Clayton DeSantis, knew of their respective obligations to preserve text messages, but failed to do so. He argues Defendants were advised of the potential legal claims by letter dated January 27, 2014, and were issued a litigation preservation letter on March 5, 2014. Despite these letters and Defendants' knowledge that text messages were a primary means of communication and important to the litigation, he claims Defendants failed to take appropriate steps to ensure that relevant text messages were preserved. In particular, Plaintiff asserts that Medtronic did not take

possession of Defendants' cell phones to copy the data, nor did they instruct relevant custodians to retain or preserve old cell phones when they were replaced or instruct them to ensure no data was lost when the phones were cloned. With regard to Mr. DeSantis, Plaintiff claims Medtronic never took possession of his cell phone and DeSantis admitted that some unknown information was lost when he traded in his phone. Plaintiff further claims that Medtronic failed to preserve the text messages of Defendant Neal Horne, and witnesses Jesse Turcott and Brian Haworth, and failed to even clone the phones until October 2016, more than two years after the litigation hold notices were sent.[1] Plaintiff asserts that there is no way to confirm that all relevant text messages have been provided and there is no way to recover deleted messages. He contends that Defendants' failure to preserve evidence has caused him prejudice and Defendants' intentional disregard for their discovery obligations warrants severe sanctions. Plaintiff seeks sanctions for spoliation of evidence in the form of an adverse instruction to the jury and attorneys' fees and costs. Alternatively, Plaintiff asks that the Court deny Defendants' motion for summary judgment and allow him to present evidence of the failure to preserve evidence to the jury.[2] (Doc. 86).

---

[1] At the hearing, Plaintiff's counsel indicated that he is seeking spoliation sanctions as to the allegedly lost text messages of only Neal Horne and Clayton DeSantis, not Jesse Turcott or Brian Haworth.

[2] In support, Plaintiff submits a January 27, 2014, letter to Medtronic's general counsel regarding potential litigation; a preservation letter dated March 5, 2014; discovery requests and responses; proof of service of the Complaint; correspondence from Verizon to Plaintiff's counsel dated August 16, 2016; as well as excerpts of depositions transcripts of Medtronic's corporate representatives Joel Bothof and Anthony Knutson, and Clayton DeSantis. (Docs. 86-1 – 86-10).

Medtronic responds that Plaintiff's motion fails because he cannot identify a single document it hasn't produced and has presented no evidence that it acted in bad faith. It claims that it complied with the litigation hold and all relevant custodians knew of their obligations to preserve relevant evidence. Although some individuals received new phones, it urges that all relevant data was backed up or cloned. It argues that it and Mr. DeSantis took reasonable steps to preserve ESI; it has produced all responsive information; and Plaintiff fails to establish that any crucial evidence is missing, that he has been prejudiced, or that Defendants acted in bad faith. Under the applicable standard, amended Rule 37(e), it claims there is no basis for sanctions.[3] (Doc. 93).

Defendant DeSantis joins and adopts Medtronic's response and argues that he acted reasonably and in good faith to preserve relevant text messages.[4] He asserts that his iPhone defaults to sending iMessages, which were backed up to his work-issued iPad. Upon his retirement, he claims Medtronic imaged his iPad and has produced the relevant messages. He argues sanctions are entirely unwarranted, even if some data was inadvertently lost during a transfer to a new phone and, moreover, Plaintiff has failed to demonstrate any prejudice resulting from same.[5] (Doc. 109).

---

[3]Medtronic submits the Declaration of its attorney Jeffrey S. Gleason in support. (Doc. 94). Mr. Gleason attests to true and correct copies of various exhibits, including deposition transcript excerpts of Neal Horne, Brian Haworth, Jesse Turcott, Mike Mathias, and John Burns, as well as Defendants' answers to interrogatories. (Docs. 94-1 – 94-9).

[4]Mr. DeSantis apparently supervised Plaintiff for a few weeks in 2014 and retired from Medtronic in May 2016.

[5]Mr. Desantis submits an excerpt from his deposition and his answers to Plaintiff's Second Set of Interrogatories. (Docs. 109-1 – 109-2).

## II.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

When considering a claim of spoliation in a case involving electronically stored information (ESI), courts look to the newly amended Federal Rule of Civil Procedure 37(e).[6] The amended Rule is applicable to civil cases commenced after December 1, 2015, "and, insofar as just and practicable, all proceedings then pending." *See* 2015 US Order 0017.[7] The case law on the application of this new Rule is relatively scant and the Eleventh Circuit has not yet weighed in on the matter. However, the Rule itself and the Advisory Committee notes provide the Court with helpful guidance.

The Advisory Committee explained the reason for the 2015 amendment as follows:

> [The prior version of the Rule] has not adequately addressed the serious problems resulting from the continued exponential growth in the volume of such information. Federal circuits have established significantly different standards for imposing sanctions or curative measures on parties who fail to preserve electronically stored information. These developments have caused litigants to expend excessive effort and money on preservation in order to avoid the risk of severe sanctions if a court finds they did not do enough.

---

[6]As text messages constitute ESI, Rule 37(e), as amended, applies in this case.

[7]Though Plaintiff initiated this action before December 1, 2015, the parties do not contest that the current version of Rule 37(e) applies here.

4

Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.[8]

As such, the new version of the Rule "authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures. It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used." *Id.*

The Rule provides:

> Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Thus, four elements must be present for Rule 37(e) to apply: (1) there must have been a duty to preserve the ESI; (2) a party must have failed to take reasonable steps to preserve the

---

[8]The prior version of the Rule, adopted in 2006, provided: "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.

ESI; (3) the ESI must have been lost as a result of the failure to take reasonable steps to preserve it; and (4) the ESI must not be recoverable through additional discovery. *See id.*

If these elements are satisfied, then the court may only award sanctions under subsection (e)(1) if there is a finding of "prejudice" or under subsection (e)(2) if there is a finding of "intent to deprive." *Id.*

## III.

### A.

It is not disputed that there was a duty to preserve relevant text messages as of early 2014. This duty arose as early as January 27, 2014, when Plaintiff's counsel sent a letter to Medtronic's general counsel regarding potential litigation (Doc. 86-1) or at least as of the March 5, 2014, litigation hold letter sent to Medtronic's counsel (Doc. 86-2). Medtronic issued a litigation hold to certain custodians on March 10, 2014. (Doc. 86-3 at 25–26).

In addition, Defendants appear to concede that some text messages may have been "lost" or "fell through the cracks." With regard to Mr. Horne's text messages, Medtronic maintains that he used his text messages as a "to-do" list and routinely deleted them upon completion of the task. As a result, Medtronic claims he had and has no responsive text messages. Nevertheless, some messages were recovered from other individuals' phones with whom Mr. Horne exchanged messages. With regard to Mr. DeSantis' text messages, Medtronic and Mr. DeSantis both agree that Mr. DeSantis did not produce any text messages from his iPhone. However, they submit that at least some relevant text messages were recovered from his Medtronic-issued iPad back-up that was returned to Medtronic after he retired in May 2016.

The parties entirely disagree over whether Medtronic and Mr. DeSantis took reasonable steps to preserve the ESI. Plaintiff argues that after issuing a litigation hold letter to certain custodians, Medtronic took "no steps" to preserve relevant information. Medtronic and Mr. DeSantis contend that the litigation hold letter was sufficient to meet their obligations and they were not required to take additional steps, such as clone the phones. They assert their actions were reasonable under the circumstances and in any event, as addressed below, did not result in any prejudice to Plaintiff and do not constitute bad faith or intent to deprive.

Rule 37(e) does not set forth a specific standard for what constitutes "reasonable steps" for preservation. The Advisory Committee notes explain:

> Due to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible.... This rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection. The court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation.

Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.

In this case, Medtronic appears a highly sophisticated litigant with significant resources. It employs in-house technicians and an in-house Digital Forensics Lab. Medtronic's general counsel was on notice of potential litigation as of January 2014, and issued litigation hold letters to certain custodians in March 2014 and to additional custodians in September 2014. It claims that custodians Horne, Mathias, DeSantis, Brian Haworth, and Jesse Turcott each testified that they understood their obligations to preserve relevant information, including text messages.

Several of the custodians did not have any responsive text messages, including Mr. Horne, who testified that he uses his text messages as a to-do list and when he has completed a task he deletes the message. (Doc. 94-1 at 235: 1–6; 237:12–22). Mr. Horne further testified that once the litigation hold was issued, he did not have any communications regarding Burns or with Burns that required preservation. (*Id.* at 233:4–18).

Although certain individuals, including Mr. DeSantis, changed phones during the course of the hold, Medtronic asserts that each custodian's data was either backed up through the Cloud or cloned from the old phone to the new phone. Neither Medtronic, nor DeSantis, maintained the old phones once the transfers occurred. When Mr. DeSantis retired from Medtronic in May 2016, Medtronic copied and preserved his work-issued iPad's hard drive, which they assert included a backup of iMessages. According to DeSantis, his iPad was last backed up on May 28, 2015. (Doc. 94-6 at 4). Defendant produced those text messages (or, more accurately, iMessages) that were collected from the iPad backup. *Id.*

It appears to the undersigned that Medtronic and Mr. DeSantis certainly *could have* done more to ensure that no relevant ESI was lost from any device, such as to take possession of the iPhones and immediately clone them or to maintain the old phones once custodians upgraded to new phones. However, the Rule requires that a litigant take "reasonable steps." On this motion, I find no basis to conclude that Defendants, even a sophisticated party like Medtronic, were *required* to take additional measures to ensure preservation of the ESI at issue here. Nor do I find case law requiring such cloning or seizure of the custodians' phones under the amended Rule.

8

And, significantly, it is entirely unclear to this Court if any ESI has been actually "lost" and/or unrecoverable from alternate sources. According to the Advisory Committee Notes: "Because electronically stored information often exists in multiple locations, loss from one source may be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.

With regard to the text messages of Mr. Horne, Plaintiff presents no basis for concluding his testimony that he deleted text messages when a task was completed and that he had no messages after the hold was in place is untrue. While it appears Mr. Horne intentionally deleted text messages prior to the anticipation of litigation, such does not give rise to a finding of spoliation. The Advisory Committee notes on Rule 37(e) explicitly state that "[t]he rule does not apply when information is lost before a duty to preserve arises." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment. In the Eleventh Circuit, the test is whether litigation was "pending or reasonably foreseeable" when the spoliation occurred. *Graff*, 310 F. App'x at 301; *see also Oil Equip. Co. Inc. v. Modern Welding Co. Inc.*, 661 F. App'x 646, 652 (11th Cir. 2016). There is insufficient evidence (apart from Plaintiff's speculation) that Mr. Horne (or Medtronic) deleted relevant messages or ESI once he was under an obligation to preserve such information.

With regard to Mr. DeSantis' text messages, again it is unclear that any messages were actually lost and unrecoverable from another source. Mr. DeSantis concedes that he upgraded to a new iPhone in 2016 and he states that the information was transferred from his old phone to the new phone at the Sprint store via iCloud when he returned his old phone to the Sprint store. (Doc. 109-1 at 4). He admits that some contacts and picture(s) were lost. *Id.* iMessages

9

from his iPad backup appear to have been produced. Plaintiff points to a message chain produced from Jesse Turcott's phone, dated April 2–3, 2014, on which Mr. DeSantis was copied but that was not produced by Mr. DeSantis. While I do find it troubling that this message chain—which specifically mentions Plaintiff and is dated after the litigation hold—inexplicably disappeared from Mr. DeSantis' phone and iPad, the messages were nonetheless recovered from another source. And, while Plaintiff posits that this indicates that additional messages existed and have not been produced, such is speculative and conclusory. On the evidence presented, again I find insufficient basis to conclude that additional text messages existed at the time the duty to preserve arose that have not been produced either from the backup or from other custodians.

On the above bases, Plaintiff's motion for spoliation is due to be denied. However, even assuming *arguendo* that Medtronic and/or Mr. DeSantis failed to take reasonable steps to preserve ESI and that relevant text messages were lost and unrecoverable from other sources as a result, I find there is no demonstration of either prejudice or intent to deprive to warrant sanctions under either Rule 37(e)(1) or (e)(2).

**B.**

As noted above, sanctions or curative measures under Rule 37(e) are only available if there is a finding of "prejudice" or "intent to deprive."

Plaintiff first asserts that curative measures are warranted under Rule 37(e)(1) because he has been prejudiced by the alleged spoliation. It is well-settled that "sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005) (citing

*Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999). As such, a determination of prejudice has long been a part of the analysis in addressing motions such as this. In the context of spoliation of ESI, determining what has been lost and the possible probative value of such information is an often difficult, even impossible, task. Under the new Rule, the burden of proving prejudice is thus left for the court's considered discretion. The Advisory Committee explains:

> Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.

Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.

Plaintiff submits that a party "suffers prejudice if the lost evidence was crucial to Plaintiff being able to prove a prima facie case." *Marshall v. Dentfirst*, 313 F.R.D. 691, 697 (N.D. Ga. 2016). He claims he has been prejudiced because he "bears the burden to prove that his protected activity was a contributing factor for his demotion and/or termination and/or that the Defendants' stated reasons for the adverse employment actions are pretextual. Even a single text could provide dispositive proof of Defendants' retaliatory intent and/or that Plaintiff's protected activity contributed to his demotion and/or termination. Such evidence would be probative to Plaintiff's Sarbanes-Oxley and whistleblower retaliation claims." (Doc. 86 at 16).

Upon thorough review of the arguments and proffered evidence, I conclude Plaintiff fails to demonstrate the significant prejudice urged by counsel. Even assuming that relevant text messages have indeed been lost (a finding I do not make), Plaintiff's assertion of prejudice is far too speculative. Plaintiff has had ample opportunity to depose the custodians and the decision-makers in this case[9] about their motivations for and conversations about Mr. Burns' demotion and subsequent termination. Yet, on this motion, Plaintiff fails to identify any crucial piece of information that has not been produced. Although it is certainly possible that there could have been a text message containing some type of "smoking gun" to prove retaliatory intent or pretext for an adverse employment action, Plaintiff's blanket and conclusory statements about what could have existed does not compel a finding of prejudice. Thus, spoliation sanctions pursuant to Rule 37(e)(1) are unwarranted.

Next, Plaintiff seeks more severe sanctions for the alleged spoliation under Rule 37(e)(2). This provision allows for sanctions, including an adverse inference or even default judgment, only upon a finding that the party acted with the "intent to deprive." Fed. R. Civ. P. 37(e)(2).

As least one court in this Circuit has found intent to deprive analogous to the bad faith standard. *Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, No. 14-cv-62216-MARRA/MATTHEWMAN, 2016 WL 1105297, at *6, n.6 (S.D. Fla. Mar. 22, 2016) (citing *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F.Supp.2d 1317, 1323 (S.D. Fla.

---

[9]Although I do not weigh in on the decision-makers in this case, Defendants deny that Messrs. Horne and DeSantis made the adverse employment decision as urged by Plaintiff. If Defendants are correct, this too would appear to diminish any harm in not receiving all text messages from either of these individuals.

2010)).[10] The Eleventh Circuit does not require a showing of malice in order to find bad faith; however, "mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Mann v. Taser Intern Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (citing *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir.1997) (per curiam); *but see Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-cv-60629, 2016 WL 815827, at *37 (S.D. Fla. Mar. 2, 2016) (imposing adverse inference sanctions against defendant for spoliation of evidence because the court found that defendant failed to take reasonable steps to preserve electronically stored information on his personal and company-owned devices). Further, the advisory committee notes explicitly "reject[] cases ... that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.

The Committee explains:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent

---

[10]In *Managed Care Solutions*, the court held that following constitutes circumstantial evidence of bad faith:
> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

736 F.Supp.2d at 1323 (citing *Walter v. Carnival Corp.*, 2010 WL 2927962 at *2 (S.D. Fla. July 23, 2010)).

> behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have. The better rule for the negligent or grossly negligent loss of electronically stored information is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction.

*Id.*

On this record, I cannot find any direct or circumstantial evidence of either intent to deprive or bad faith. At most, Plaintiff has presented evidence of Medtronic and/or Mr. DeSantis' negligence in failing to collect and retain the ESI sooner.[11] However, Plaintiff presents no evidence that either Defendant acted in bad faith or took any affirmative action to destroy evidence.[12] As discussed above, while Defendants could have taken additional steps to preserve the text messages, negligent or even grossly negligent failure to do so does not warrant a finding of intent to deprive. As such, I find the severe sanctions requested under Rule 37(e)(2) are also unwarranted.

---

[11] Whether Defendants' conduct merits affording Plaintiff the opportunity to demonstrate such in front of the jury at trial is better left for a decision by the presiding judge.

[12] Plaintiff's reliance on *Alabama Aircraft Industries v. The Boeing Co.*, No. 2:11-cv-03577-RDP, 2017 WL 930597 (N.D. Ala. Mar. 9, 2017) is unpersuasive and distinguishable from the case at bar. In that case, the court specifically found that the parties had reached an agreement regarding proprietary data and established a "Firewall Plan" for preservation of data. There, "rather than handling Blake's Pemco ESI as they did their own (in compliance with the Firewall Plan), Smith and Holden (Boeing's Firewall roster administrator), accessed Blake's company computer and, in two stages, permanently deleted Blake's Pemco-related ESI. And, these two steps required intentional actions. First, Smith and Holden moved the Pemco ESI to the Recycle Bin. Second, they then "emptied" the Recycle Bin (read: they deleted the ESI rather than copying it to a disk to deliver to the legal department before deleting it, as required)." *Id.* at *5.

**IV.**

Accordingly, upon consideration, **Plaintiff's Motion for Sanctions for Spoliation Against Defendants Medtronic, Inc. and Clayton DeSantis** (Doc. 86) is **DENIED.**

**DONE and ORDERED** in Tampa, Florida, this 9th day of August 2017.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record